**Gilbert VASQUEZ GARZA, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 13–89–422–CR.**

Court of Appeals of Texas,
Corpus Christi.

June 29, 1990.

Rehearing Overruled Aug. 31, 1990.

---

Phillip M. Westergren, Corpus Christi, for appellant.

Carlos Valdez, County Atty., Corpus Christi, for appellee.

Before NYE, C.J., and BENAVIDES and DORSEY, JJ.

## OPINION

BENAVIDES, Justice.

Appellant Gilbert Vasquez Garza was charged with driving while intoxicated (DWI) and terroristic threats. A jury acquitted him of the terroristic threats charge and found him guilty of driving while intoxicated. His punishment was assessed at one year in the county jail, probated for two years, and a fine of $500. By six points of error, appellant appeals from his conviction on the DWI charge complaining of the admission of a tape recording and the exclusion of other evidence at his trial. We affirm the judgment of the trial court.

The record reveals that in the early morning hours of November 23, 1986, Officer Meza of the Nueces County Sheriff's Department observed appellant's car weaving down a public road in Robstown. After appellant unsuccessfully negotiated a u-turn, drove over a curb while turning a corner, nearly hit several parked cars, and continued to weave down the road, Officer Meza turned on his overhead flashing

lights and commenced pursuit. He followed appellant for ten blocks, during which time appellant continued to weave, sped up, and fishtailed while turning a corner, again nearly hitting several parked cars. Appellant finally responded to Officer Meza's signals and pulled over in the parking lot of a restaurant.

After appellant got out of his car at Officer Meza's request, Officer Meza observed that appellant's eyes were watery and glossy, that his speech was slurred, that he had the odor of alcohol on his breath, and that he was swaying when he stood and staggering when he walked. Officer Meza determined that appellant, who he recognized as a Robstown police detective, was intoxicated and placed him under arrest and read him his rights.

Appellant became belligerent and disrespectful and Officer Meza radioed for backup from the Sheriff's Department and contacted the Robstown police on appellant's walkie-talkie. Within minutes two other officers from the sheriff's department were on the scene, as well as two Robstown Police officers, three deputy constables and an officer with the Texas Alcoholic Beverages Commission. The other two sheriff's department officers, Plummer and Soliz, and one of the Robstown police officers, Gomez, were the only officers at the scene other than Meza who got close enough to appellant to actually observe his physical condition. All three of them observed that appellant had the smell of intoxicating beverages on his breath, and that his eyes were either small looking or bloodshot as if he had been drinking, and all three were of the opinion that appellant was intoxicated.

Upon Meza's request, Officers Plummer and Soliz helped Officer Meza handcuff appellant, who was struggling and resisting arrest, and place him in the back seat of Officer Meza's patrol car. At that time, Officer Meza re-read appellant's rights to him and again told him that he was under arrest for DWI. Appellant then began cursing and screaming at Officer Meza in Spanish and, according to Officer Meza, threatening him. Officer Plummer, who along with Officer Soliz was listening to appellant, offered his portable tape recorder to Officer Meza. Officer Meza used the recorder to tape appellant during the trip from Robstown to the Nueces County Jail in Corpus Christi. During the entire trip, appellant repeatedly cursed and verbally abused Officer Meza. Only occasionally did Officer Meza respond to appellant, and at those times it was with comments such as "what's wrong with you" and "I don't have to fight you."

Officer Meza turned off the tape recorder when he reached the Nueces County Jail and he and several other officers removed a reluctant appellant from the back seat of the patrol car. While at the jail, appellant refused to take the breath intoxilizer test or allow himself to be videotaped.

By appellant's first three points of error, he complains that the trial court erred in admitting a copy of the tape recording of appellant made during custody, contending that the tape did not contain a warning to appellant that he was being recorded and that all the voices on the tape were not identified. He also complains that the original tape was never accounted for and that the admitted tape was not an accurate reproduction of the original tape. Appellant objected at trial on these same grounds. The judge overruled appellant's objection and admitted the tape.

■ The predicate for admission of tape recordings into evidence was set forth in *Edwards v. State*, 551 S.W.2d 731, 733 (Tex.Crim.App.1977):

(1) a showing that the recording device was capable of taking testimony, (2) a showing that the operator of the device was competent, (3) establishment of the authenticity and correctness of the recording, (4) a showing that changes, additions, or deletions have not been made, (5) a showing of the manner of the preservation of the recording, (6) identification of the speakers, and (7) a showing that the testimony elicited was voluntarily made without any kind of inducement.

These requirements do not need direct proof if they can be inferred from the testimony. *See Edwards*, 551 S.W.2d at 733.

The cassette tape which was first admitted into evidence was a copy of the original tape. Appellant complains that this tape should not have been admitted because it had been altered and was not an accurate reproduction. The *Edwards* requirements do not mean that any alteration in a tape renders the tape per se inadmissible. *Quinones v. State*, 592 S.W.2d 933, 944 (Tex.Crim.App.1980) *cert. denied*, 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 *reh. denied*, 449 U.S. 1027, 101 S.Ct. 600, 66 L.Ed.2d 490 (1980). If the alteration is accidental and is sufficiently explained so that its presence does not affect the reliability and trustworthiness of the evidence, the recording can still be admitted. *Quinones*, 592 S.W.2d at 944. The copy which was admitted did contain everything that was on the original until it (the copy) ended; more was contained on the original than on the copy. The transactions at the jail were not contained in the copy, and the absence of that portion was explained by the shortness of the tape on which the copy was made. Further, we note that the original tape was admitted into evidence.

Officer Meza identified his own voice and appellant's voice on the tape. He also identified voices in the background on the tape as the voices of the other law enforcement officers who were on the scene. Officer Meza was unable to positively identify all of the background voices, but could say that they were other law enforcement officers. In view of the fact that testimony established that the only other people present during the time the recording was made were either the law enforcement officers at the scene of the arrest or the law enforcement officers at the jail, we find that Officer Meza adequately identified the voices on the tape. *See generally, Elliot v. State*, 681 S.W.2d 98, 103 (Tex.App.—Houston [14th Dist.] 1984), *aff'd*, 687 S.W.2d 359 (Tex.Crim.App. 1985).

Appellant complains that the tape does not contain a warning that he was being recorded. A warning is necessary for a custodial interrogation. *See* Tex. Code Crim.Proc.Ann. art. 38.22 (Vernon 1979). Where an accused in custody spontaneously volunteers information which is not in response to earlier interrogation by authorities, the statement is admissible. *Stevens v. State*, 671 S.W.2d 517, 520 (Tex. Crim.App.1984). Appellant's statements were in response to being arrested by a fellow law enforcement officer and primarily consisted of insults and invitations to fight; they were not in response to prior interrogation. Since appellant's statement was not the result of a custodial interrogation, no warning was needed.

Appellant's complaint that the trial court erred in admitting a copy of the tape when the original tape recording was never accounted for is groundless because the original tape was located, introduced and admitted into evidence. The reliability and trustworthiness of the recording was not affected by the admission of the shorter tape. We hold that the tape was admissible and that the trial court did not err in admitting it.

Even if the tape had not been admissible, its admission would have been harmless error. The State used the tape as the chief evidence for the prosecution of the terroristic threats charge. Appellant used the tape in defense of both the DWI and the terroristic threats charges. Appellant claims that he was harmed with respect to his DWI charge by the facts that the tape contained combative and abusive language and that the interpreter stated that appellant's words were slurred on the tape.

To sustain a conviction for DWI, the evidence must show that appellant drove the vehicle, that he drove while he was intoxicated, and that he drove in a public place. *Reynolds v. State*, 744 S.W.2d 156, 158 (Tex.App.—Amarillo 1987, pet. ref'd); *Sinast v. State*, 688 S.W.2d 631 (Tex.App.—Corpus Christi 1985, pet. ref'd); Tex.Rev.Civ.Stat.Ann. art. 6701*l*-1(b) (Vernon Supp.1989). When there is competent evidence of an individual's inebriation, such as observations by a police officer regarding an individual's bloodshot eyes, slurred speech and the odor of alcohol, other evidence of inebriation which is improperly

admitted will not be reversible error. *See Rathmell v. State*, 653 S.W.2d 498, 500–01 (Tex.App.—Corpus Christi 1983, pet. ref'd); *accord Mitchell v. State*, 750 S.W.2d 378, 380 (Tex.App.—Fort Worth 1988, pet. ref'd).

In this case, testimony established that appellant drove his car on a public roadway. Further, there was competent evidence of appellant's inebriation at the time he was driving; testimony from four law enforcement officers established that appellant was driving erratically, that after he had stopped the officers noticed that appellant had bloodshot and glassy eyes, was unsteady on his feet, had slurred speech, smelled of alcohol, and refused to take the breath intoxilizer test or to be videotaped. *See Oliphant v. State*, 764 S.W.2d 858, 859–60 (Tex.App.—Corpus Christi 1989, pet. ref'd). At no time did the State argue that the character or contents of the tape were relevant to or established appellant's intoxication, nor was the tape admitted for such a purpose. At trial, the State argued that the tape was relevant solely to the terroristic threats charge; appellant was acquitted of that charge. In view of the lack of emphasis placed on the tape by the State in prosecuting the DWI offense and the extent of the evidence in support of the finding of guilty of the DWI charge, any error in the admission of the tape would have been harmless. We overrule appellant's first, second and third points of error.

Appellant's fourth and fifth points of error concern alleged impeachment evidence which appellant asserts should have been admitted or produced. This evidence consisted of copies of offense reports that Meza testified that he kept at his home. In support of his points, appellant points to testimony that appellant had teased Officer Meza at a bachelor party about sitting directly in front of a pornographic movie for a long period of time and drooling as a result of watching the movie. According to appellant, Officer Meza was embarrassed and angry as a result of the teasing. Appellant wanted to show that Officer Meza kept only appellant's offense report at home and did not keep other reports on file because appellant's case was special to Meza and that he had a personal vendetta against appellant.

By his fourth point of error, appellant contends that the trial court erred in refusing to admit other offense reports the arresting officer kept at home after he testified that he kept a copy of defendant's arrest report at home. Appellant did not offer the other reports into evidence nor did he even have the other reports. Since there was no offer of the reports, the trial court could not have refused to admit the reports. What the trial court refused to do was to order Officer Meza to bring the reports from home. Accordingly, we overrule appellant's fourth point of error.

By his fifth point of error, appellant contends that the trial court erred in not allowing appellant to make a bill of exceptions by requiring the arresting officer to bring other reports kept by him at home to court for purposes of making that bill of exceptions. At trial, the judge refused to order Officer Meza to bring the reports from home, stating that he could not see the relevancy of the reports. The judge then limited appellant's cross-examination on this subject to "a couple of more questions." Later, when appellant wanted to make a bill of exception regarding these reports, the judge refused to order Meza to bring the reports from home, stating that he would only order Meza to bring those reports which were relevant to the case. Appellant argued that he needed all the reports for a bill of exceptions to show that they were relevant. On appeal, appellant recites the same arguments without any case law in support.

The State argues that this is a discovery matter instead of a question of impeachment. It argues that not only was appellant's request for the reports untimely, but that the reports which were requested are not discoverable because they are the work product of the police and are not material to this case.

We agree with the State's position. Appellant's request that the trial court order Officer Meza to produce the reports was a discovery request. *See* Tex.

Code Crim.Proc.Ann. art. 39.14 (Vernon 1989). Decisions involving discovery in criminal cases are committed to the discretion of the trial court. *Dickens v. Court of App., 2nd Sup. Judicial Dist.*, 727 S.W.2d 542, 552 (Tex.Crim.App.1987). Police reports are work product of police and are not discoverable. *Brem v. State*, 571 S.W.2d 314, 322 (Tex.Crim.App.1978); Tex. Code Crim.Proc.Ann. art. 39.14. To gain discovery, an appellant must have shown good cause, materiality and possession by the State. *Lerma v. State*, 632 S.W.2d 893, 896 (Tex.App.—Corpus Christi 1982, pet. ref'd). In this case, the requested reports were those of a police officer and appellant did not establish the materiality of the reports. Either of these would have been proper reasons to deny a discovery request for the reports. We find no abuse of discretion on the part of the trial court and we overrule appellant's fifth point of error.

By his sixth point of error, appellant contends that the trial court erred in refusing to allow appellant to show that the arresting officer had been demoted for improper conduct in issuing traffic citations and arrests after the State had qualified him as an expert on stopping DWI offenders. The State did not qualify Officer Meza as an expert on traffic and DWI cases, but merely had him recite his experience with stopping DWI offenders. Further, Officer Meza was demoted some time after the incident in question and there was no showing that the demotion had anything to do with this case, or any other DWI arrest. The court did not allow the evidence on the grounds that it was irrelevant. The trial court has considerable discretion regarding how and when bias may be proved and regarding what collateral evidence is material for that purpose. *Cloud v. State*, 567 S.W.2d 801, 802 (Tex.Crim. App.1978). Under the circumstances, we do not find that the trial court abused its discretion in refusing to allow the evidence.

The judgment of the trial court is AFFIRMED.