**Sally Jane JUHASZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 13–91–146–CR.**

Court of Appeals of Texas,
Corpus Christi.

Feb. 13, 1992.
Rehearing Overruled March 5, 1992.
Discretionary Review Refused
June 24, 1992.

Larry Warner, John Carrington, Harlingen, for appellant.

Luis V. Saenz, County Atty., Crim. Dist., Brownsville, for appellee.

Before NYE, C.J., and BISSETT[1] and SEERDEN, JJ.

## OPINION

BISSETT, Justice (Assigned).

A jury found appellant guilty of voluntary manslaughter, assessed punishment at twelve years in prison and a $5,000 fine, and returned an affirmative finding on use of a deadly weapon. Appellant raises sixteen points of error. We affirm the trial court's judgment.

Appellant shot her boyfriend, Ronald James Henry, in the head in her apartment. She owned the apartment complex, and the victim lived with her. The State argued it was murder, but the charge included instructions on voluntary manslaughter and

---

1. Assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1988).

on self-defense. Appellant claimed self-defense, testifying that the victim had demanded that she shoot herself in the head, had declared he would shoot her if she did not, and that she felt retreat would be futile. Evidence showed both appellant and her boyfriend had been drinking all day and had used marihuana earlier as well.

■ Points one through four and twelve through fifteen challenge the admission of various items of evidence. By points one through four, appellant challenges the admission into evidence of State's Exhibit No. 1, a tape recording of a telephone conversation. She complains that it was prejudicial hearsay, that the proper predicate was not laid, that she properly objected on those grounds, and that the recording admitted was a copy in violation of Tex.R.Crim.Evid. 1004, which specifies when an original of a recording is not required. The record shows that appellant initially objected to the offer of the audiotape, specifying only that the speakers were not identified.[2] After more testimony, the exhibit was offered again and was admitted without objection.

Maria Elena Ontiveros testified that she was an EMS (Emergency Medical Service) dispatcher who answered calls to 911. She said she received a call on December 22, 1989, at 9:40 p.m., which call was recorded on a disc at the station in her custody. She said the recording equipment was operating correctly and accurately. She testified that special equipment would be required to play that disc, but that State's Exhibit No. 1 was an exact duplicate of the 911 call, explained how the duplicate was made and that the operator recording it was competent to use the master disc player and the recorder, she said she had listened to both and that the copy was correct and accurate. She testified that the voices on the tape were hers and the caller's, except

for an officer's voice at the end of the tape. (In testimony given after the tape was admitted, Kenneth Leon Novak testified he phoned EMS, and Harlingen Police Officer Antonio Sanchez testified that when he arrived at the scene, Novak gave him the phone and he spoke to a dispatcher briefly. An "unidentified voice" in the transcription of the audiotape says, "This is the front office," and "Who are you talking to.")

■ Generally, one must object every time allegedly inadmissible evidence is offered at the peril of waiving the objection. *Braughton v. State*, 749 S.W.2d 528, 531 (Tex.App.—Corpus Christi 1988, pet. ref'd), *cert. denied*, 493 U.S. 870, 110 S.Ct. 198, 107 L.Ed.2d 152 (1989). Moreover, an objection must be timely and specific, and an objection stating one legal theory may not support a different legal theory on appeal. *See Johnson v. State*, 803 S.W.2d 272, 292 (Tex.Crim.App.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991); *Sterling v. State*, 800 S.W.2d 513, 521 (Tex.Crim.App.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2816, 115 L.Ed.2d 988 (1991).

■ Furthermore, audiotapes have been held admissible when the principal speakers were identified, even if every voice was not identified. *See Vasquez Garza v. State*, 794 S.W.2d 530, 533 (Tex.App.—Corpus Christi 1990, pet. ref'd.); *Elliott v. State*, 681 S.W.2d 98, 103 (Tex.App.—Houston [14th Dist.] 1984), *aff'd*, 687 S.W.2d 359 (Tex.Crim.App.1985). From the context and our knowledge of who was present, we can infer that the "unidentified voice" was appellant's.

The trial court did not err in admitting the audiotape. We overrule points one through four.

By points ten and eleven, appellant contends that the trial court erred in overruling her timely objection to the admission of

---

**2.** A proper foundation to admit a sound recording is 1) a showing that the recording device was capable of taking testimony, 2) a showing that the operator of the device was competent, 3) establishment of the authenticity and correctness of the recording, 4) a showing that changes, additions, or deletions have not been made, 5) a showing of the manner of preservation of the recording, 6) identification of the speakers, and 7) a showing that the testimony elicited was voluntarily made without any kind of inducement. *Edwards v. State*, 551 S.W.2d 731, 733 (Tex.Crim.App.1977). Requirements which can be inferred from the testimony need not be shown with particularity. *Edwards*, 551 S.W.2d at 733.

an extraneous offense, that a motion in limine was violated, and that the trial court's instruction to disregard was insufficient to cure the harm. Appellant complains that Novak testified about an incident in which she was allegedly drunk and belligerent and slapped one Danny Stump, and to an incident in which she allegedly chased a former boyfriend, Rick Gordon, down the road with a butcher knife.

After Novak testified that appellant slapped Stump, the prosecutor asked if Novak was surprised that she became physically abusive of him. After Novak answered that question, appellant's attorney objected that the incident was remote in time. The trial court overruled the objection, and Novak continued his answer, "You couldn't even talk to Sally when she was drunk. Even if you agreed with her you were wrong." The prosecutor began, "Have you seen other persons—," and Novak interrupted to say, "I've seen her chase her ex down the road with a butcher knife." After he identified the "ex" as Rick Gordon, appellant's attorney objected that the prosecutor was violating his motion in limine. The trial court ordered the jury to disregard the last answer, and the State resumed redirect examination of Novak.

Appellant testified, without objection, that she did slap Stump "for being rude and coming in my house at 2:30 in the morning drunk and disorderly and he was swearing at me...." She denied chasing Gordon with a knife, but claimed to have chased someone else, then corrected herself and explained she had carried the knife when she went to a tenant's apartment who had called to report a peeping Tom, she threw the knife in the bushes, and Gordon called the police.

▬ Appellant's motions in limine, which dealt generally with oral statements and with extraneous offenses, were not ruled on. Moreover, violation of a motion in limine may entitle a person to relief, but the remedies lie with the trial court. *Lewis v. State,* 627 S.W.2d 492, 494 (Tex.App.—Houston [1st Dist.] 1981, no pet.). Denying or granting a motion in limine, standing alone, cannot create reversible error.

*Romo v. State,* 577 S.W.2d 251, 252 (Tex. Crim.App.1979); *Ransom v. State,* 630 S.W.2d 904, 907 (Tex.App.—Amarillo 1982, no pet.). To preserve error on appeal for violating a motion in limine, appellant must obtain a ruling on the admission of evidence at trial. *See Nunfio v. State,* 808 S.W.2d 482, 484 n. 1 (Tex.Crim.App.1991); *Ransom,* 630 S.W.2d at 907. Appellant's motion in limine is of no consequence on appeal.

▬ Objections made after questions are answered do not preserve error for appeal. *See Polk v. State,* 729 S.W.2d 749, 752–53 (Tex.Crim.App.1987). Moreover, a defendant must pursue his objections until he receives an adverse ruling to preserve his point for review. *Harris v. State,* 784 S.W.2d 5, 12 n. 4 (Tex.Crim.App.1989). *cert. denied,* 494 U.S. 1090, 110 S.Ct. 1837, 108 L.Ed.2d 966 (1990); *Shipp v. State,* 482 S.W.2d 870, 871 (Tex.Crim.App.1972); *Nance v. State,* 807 S.W.2d 855, 867 (Tex. App.—Corpus Christi 1991, pet. ref'd). No error is preserved if a defendant receives all the relief he requests. *Johnson v. State,* 604 S.W.2d 128, 132 (Tex.Crim.App. 1980); *Norwood v. State,* 737 S.W.2d 71, 73 (Tex.App.—Houston [14th Dist.] 1987, pet. ref'd). Additionally, when a defendant admits testimony which is substantially the same as that to which he objected, or allows it to come in from another source without objection, he may not complain on appeal. *See Stoker v. State,* 788 S.W.2d 1, 14 (Tex.Crim.App.1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990); *Hudson v. State,* 675 S.W.2d 507, 511 (Tex.Crim.App.1984); *Kohler v. State,* 713 S.W.2d 141, 144 (Tex.App.—Corpus Christi 1986, pet. ref'd).

▬ Except in extreme cases, if the trial court sustains a timely objection and instructs the jury to disregard a response referring to an extraneous offense, the error is cured. *Moody v. State,* 827 S.W.2d 875, 890 (Tex.Crim.App.1992); *Barney v. State,* 698 S.W.2d 114, 125 (Tex.Crim.App. 1985).

Appellant has not preserved error. We overrule points ten and eleven.

By point twelve, appellant challenges the admissibility of State's Exhibit No. 15, photographs the doctor who performed the autopsy, pathologist Marguerite DeWitt, used to illustrate the bullet path. Dr. DeWitt testified that the photographs fairly and accurately represented the skull or cranium of the victim as she saw it at the time of the autopsy, although they did not appear to be photographs she made. Appellant's attorney objected that the photos were inflammatory and that the witness had not taken the photos. On appeal, appellant challenges the photos only as gruesome.

Admission of photographs is within the discretion of the trial court, which determines whether they serve the proper purpose in enlightenment of the jury. *Villegas v. State*, 791 S.W.2d 226, 237 (Tex.App.—Corpus Christi 1990, pet. ref'd). Photographs are admissible if they are relevant and their probative value is not substantially outweighed by unfair prejudice. *Madden v. State*, 799 S.W.2d 683, 696 n. 22 (Tex.Crim.App.1990); Tex. R.Crim.Evid. 403. Gruesomeness is merely one factor in determining whether a photograph is prejudicial. *Madden*, 799 S.W.2d at 696; *see Long v. State*, 823 S.W.2d 259, 272 (Tex.Crim.App.1990). Photographs showing a victim's wound have been held admissible when offered to clarify and support observations and conclusions about the victim's injury and to reveal the manner of death as alleged in the indictment, and not solely to inflame the minds of jurors. *See Madden*, 799 S.W.2d at 697; *Goodwin v. State*, 799 S.W.2d 719, 739 (Tex.Crim.App.1990), *cert. denied*, — U.S. ——, 111 S.Ct. 2913, 115 L.Ed.2d 1076 (1991); *Ward v. State*, 787 S.W.2d 116, 120 (Tex.App.—Corpus Christi 1990, pet. ref'd).

The photographs were material, relevant, and competent, and offered to clarify the testimony about the cause of death. Their probative value outweighed their prejudicial effect. We overrule point twelve.

By point thirteen, appellant cites as error the trial court's admission of the atomic absorption kit (or paraffin test), State's Exhibit No. 2. This was a test to detect gunshot residue on swabs taken from the front and back of appellant's and the victim's hands. By point fourteen, appellant argues that the chemist's conclusion that the test results were consistent with the victim's hand being in front of the weapon should not have been admitted.

Juan Antonio Rojas, a Texas Department of Public Safety Crime Lab forensic chemist, testified that he received material identified as State's Exhibit 2 from R.D. Moore by registered mail, and that he returned State's Exhibit 2 to R.D. Moore. Rojas said he was instructed to look for gunshot residues on swabs included in the kit. He testified that gunshot residue is a combination of antimony, barium, and lead, all of which are found in the primer of a bullet.

Comparing with tests made firing the weapon, Rojas concluded that the presence of such residue on the hand would indicate that a person handled the weapon after it was fired or was in front of the weapon when fired. No residues were detected on appellant's hand swabs, and gunshot residue was detected on the hand swabs from the inside of the victim's right and left hands.

The prosecutor asked whether the result was consistent with the weapon being fired with the individual being in front of the weapon, and apparently gestured to indicate an individual with hands upraised, palms facing the weapon. It was undisputed that the victim had fired the gun earlier in the day and had continued to handle the gun. During closing argument, appellant's attorney pointed out that the residue on the victim's hands could be attributed to this earlier target practice and that his hands were not near his head when he was shot.

Appellant objected that the chain of custody had not been shown when the exhibit was admitted. The sufficiency of the predicate to admit evidence is addressed to the discretion of the trial court. *Smith v. State*, 683 S.W.2d 393, 404 (Tex. Crim.App.1984). An objection simply alleging that the proper chain of custody has not been met is insufficient. *Silguero v. State*, 654 S.W.2d 492, 494 (Tex.App.—Corpus Christi 1983, pet. ref'd). When the

beginning and end of a chain of custody is established, and no evidence shows tampering, any gaps in the chain go to the weight rather than to the admissibility of the evidence, particularly when the chain goes inside a laboratory. *Burns v. State,* 807 S.W.2d 878, 884 (Tex.App.—Corpus Christi 1991, pet. ref'd); *see Bueno v. State,* 501 S.W.2d 339, 341 (Tex.Crim.App.1973).

■ There was clearly no harm to appellant from the evidence. She admitted that she shot the victim, and only the circumstances and her mental state were at issue. The jury only convicted her of voluntary manslaughter, thus clearly accepting her version of events. We overrule points thirteen and fourteen.

By point fifteen, appellant argues that error occurred when the trial court admitted evidence acquired through her allegedly illegal arrest. The evidence she complains of is State's Exhibit 2, the atomic absorption kit, or test for gunshot residue, on her hands.

Officer Antonio Sanchez testified that he responded to the call about the shooting and found Novak on the phone to EMS. The victim was on the floor and then Novak and appellant were walking around. He said that he did not want to begin questioning, was concerned that they might leave, and did not have a prime suspect. He said that appellant made statements to him which were not a result of questioning, saying she shot the victim while playing Russian roulette. He testified that Officer Martinez arrested her at the scene later, after her statements. Appellant did not raise the issue below by timely motion to suppress, objection comporting with the appellate complaint, or request for jury instruction.

■ If a defendant is not in police custody when she makes an oral confession and that confession is given freely, voluntarily, and without compulsion, it and evidence acquired through it are admissible. *Shiflet v. State,* 732 S.W.2d 622, 623 (Tex. Crim.App.1985); *Sewell v. State,* 797 S.W.2d 376, 379 (Tex.App.—Corpus Christi 1990, no pet.); *Huerta v. State,* 709 S.W.2d 21, 22–23 (Tex.App.—Corpus Christi 1986,

no pet.). A person is "seized" when a police officer accuses that individual or restrains his freedom to walk away. *Terry v. Ohio,* 392 U.S. 1, 17, 88 S.Ct. 1868, 1877–78, 20 L.Ed.2d 889 (1968); *Stewart v. State,* 603 S.W.2d 861, 862 (Tex.Crim.App. 1980); *see Boyd v. State,* 811 S.W.2d 105, 125 (Tex.Crim.App.1991).

■ The evidence does not show that appellant was accused or restrained in any way when she made the statements, or that police exerted any pressure. Moreover, since appellant admitted that she fired the fatal bullet, the test verifying that the gunshot residue was consistent with her admission is not harmful. We overrule point fifteen.

Points six through nine are complaints about comments the prosecutor made in closing argument. Appellant contends the prosecutor injected his personal opinion that she was not truthful. She did not object when the prosecutor made the comments.

By a second point numbered point six, appellant complains that the State said in closing argument, "I wonder when she was in preschool whether or not she ever heard or whether she may have told her children that she was in charge of, that she was responsible for, 'It's not right to tell stories.' That's a story." The State had just recounted appellant's testimony about her use of drugs. Appellant had operated a preschool before moving to Texas.

By point seven she attacks the State's remark, "It's our position that that is patently false. Patently a lie, a self-serving lie," referring to her testimony about how the victim fired the gun after returning to her apartment with her that day. The State then suggested that evidence about bullets did not substantiate her story but made it improbable.

By point eight she objects to, "Another thing I want you to think about is this lie about, he was sitting across from me and pointed the gun." The State then argued that appellant was too drunk to have grabbed the gun as quickly as she claimed

and to have fired with such accuracy in the situation she described.

Point nine attacks the prosecutor's comments, "Somebody else did, but you, Ms. Juhasz, have a story for everything," and, "And now, she comes in here and compounds this horrible crime, this inhumanity to a defenseless human being by coming in there and telling this incredible story." The first comment followed the State's recounting of appellant's explanation of her alleged chasing of her former boyfriend with the knife, and who phoned the police. The second remark concerned appellant's account of the victim's final act being to threaten her life. The State suggested that appellant lied about the events leading to the shooting and thus maligned the character of her victim.

During cross-examination, the State challenged appellant's veracity starting with her claim to be a drug-free person when she had just admitted to smoking marihuana. The State reviewed her prior testimony in detail, attempting to disparage her account. At the end of re-examination, appellant said she had been under a lot of stress since the death of the victim. On recross-examination, the prosecutor then asked, "Ms. Juhasz, isn't it also true that the stress you are facing is from the possibility that a group of 12 people aren't going to be believing you?" Appellant agreed, and also affirmed that "it's very very plain and obvious that the only other person who could really contradict what you are saying is dead and buried now." The prosecutor then asked, "So there is really no assurance that you can give these people here to assure them that your version of what happened that afternoon, as you are first saying it to anybody today, is really the truth, is there?" She replied, "I ask that they believe me because it's the truth." The prosecutor asked, "Because you say it's the truth?" and she said, "It is the truth. It's the God's truth."

■■■■ The State must confine its jury argument to four areas: 1) summation of the evidence, 2) reasonable deductions from the evidence, 3) response to defendant's argument, and 4) plea for law enforcement.

*Borjan v. State,* 787 S.W.2d 53, 55 (Tex. Crim.App.1990); *Hinojosa v. State,* 788 S.W.2d 594, 597 (Tex.App.—Corpus Christi 1990, pet. ref'd). Absent objection, unless the argument was so prejudicial that an instruction to disregard could not remove its effect on the jury, we do not reverse. *Hinojosa,* 788 S.W.2d at 596. To determine whether the argument is manifestly improper, we look at the record as a whole. *Willis v. State,* 785 S.W.2d 378, 385 (Tex. Crim.App.1990), *cert. denied,* — U.S. —, 111 S.Ct. 279, 112 L.Ed.2d 234 (1990). We view the language from the standpoint of the jury. *See Jones v. State,* 693 S.W.2d 406, 407 (Tex.Crim.App.1985).

■■■ Counsel is allowed wide latitude in drawing inferences from the evidence so long as they are fair, legitimate, and offered in good faith. *Gaddis v. State,* 753 S.W.2d 396, 398 (Tex.Crim.App.1988); *Mowbray v. State,* 788 S.W.2d 658, 664 (Tex.App.—Corpus Christi 1990, pet. ref'd), *cert. denied,* — U.S. —, 111 S.Ct. 999, 112 L.Ed.2d 1082 (1991).

■■■ Appellant's credibility was the key issue at trial. Once a criminal defendant takes the witness stand, he (or she) is subject to the same rules as any other witness and may be impeached, contradicted, made to give evidence against himself (herself), cross-examined on new matters, and treated in every respect as any other witness, except when there are overriding constitutional or statutory provisions. *Sanchez v. State,* 707 S.W.2d 575, 577 (Tex.Crim.App. 1986); *Sinegal v. State,* 789 S.W.2d 383, 387 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd); Tex.R.Crim.Evid. 609(a, b).

■■■ In final argument, the prosecutor was asking the jury to examine the evidence and to conclude that the evidence supported the State's version of events, rather than appellant's, and that appellant had lied. He did not refer to personal beliefs to support his conclusions. It is permissible to make inferences from the evidence in argument, even inferences that a defendant has lied. *See Adams v. State,* 813 S.W.2d 698, 700 (Tex.App.—Houston [1st Dist.] 1991, pet. ref'd).

■ We find no error which could not have been cured by an instruction to disregard, had an appropriate objection been lodged. *See Borrego v. State*, 800 S.W.2d 373, 377 (Tex.App.—Corpus Christi 1990, pet. ref'd). Moreover, the jury clearly believed appellant's account of the crime, as they convicted her only of voluntary manslaughter. Thus, appellant has shown no harm. We overrule the second point six and points seven through nine.

■ In the first point six, appellant urges that the remark, "And this, ladies and gentlemen, is the first time in eleven months that anybody has ever heard anything of this self-defense defense," was an impermissible comment on her post-arrest silence.[3] Again, no objection was made at trial.

The general rule is that to preserve error committed during jury argument, the defendant must object until receiving an adverse ruling. *Harris v. State*, 784 S.W.2d 5, 12 (Tex.Crim.App.1989); *Mora v. State*, 797 S.W.2d 209, 215 (Tex.App.—Corpus Christi 1990, pet. ref'd). Generally, improper jury argument is reversible error only when it is so inflammatory that an instruction to disregard cannot cure its prejudicial effect. *Logan v. State*, 698 S.W.2d 680, 682 (Tex.Crim.App.1985); *Mora*, 797 S.W.2d at 215.

■ An instruction to disregard can cure comments on post-arrest silence. *Waldo v. State*, 746 S.W.2d 750, 754 (Tex. Crim.App.1988); *Young v. State*, 803 S.W.2d 335, 339 (Tex.App.—Waco 1990, pet. granted). In *Greenwood v. State*, 740 S.W.2d 857, 860 (Tex.App.—Dallas 1987, no pet.), the court distinguished between the Fifth Amendment rights against comment on failure to testify and on post-arrest silence, requiring in one of its alternate holdings that a defendant specify that he objected to a remark on the basis of his right of post-arrest silence to preserve error. The appellate court also held the comment harmless because the trial court instructed the jury to disregard it. Because there

was only one isolated reference to appellant's post-arrest silence, any harm could have been cured by an instruction, and the failure to object and to ask for an instruction waived error. *See Thomas v. State*, 812 S.W.2d 346, 350 (Tex.App.—Dallas 1991, pet. ref'd) (giving test in context of ineffective counsel claim based on failure to object); *accord, Buitureida v. State*, 684 S.W.2d 133, 142 (Tex.App.—Corpus Christi 1984, pet. ref'd) (objections overruled, instruction given, mistrial denied).

The shooting occurred eleven months before trial. Before her arrest, appellant said she and the victim were playing Russian roulette. Officer Sanchez testified that she indicated that she had put the gun to the victim's head and pulled the trigger. He said the game was played by taking turns pointing the gun at one's own head and pulling the trigger, or by taking turns pointing the gun at each other. He had never heard of anyone playing the game with a semiautomatic weapon, as this would not be a game of chance. Thus, appellant had volunteered statements that did not support self-defense.

■ At trial, appellant testified and, through her attorney, specifically argued self-defense. No evidence, questioning, or other reference showed her behavior or whether she spoke with police or the prosecution between arrest and trial. Thus, the comment highlights a possible discrepancy in her explanation at the time of the offense and at trial, constituting a permissible attack on appellant's credibility. We overrule the first point six.

By point five, appellant complains of the trial court's instruction on voluntary intoxication. Specifically, she asserts that the charge failed to distinguish between voluntary and involuntary intoxication. She asserts that the evidence would support a defense of intoxication and that she was thus entitled to a charge on it. She concedes that she did not raise any objection on this matter at trial, but urges that we

---

**3.** An individual's post-arrest silence may not be used against him. *Doyle v. Ohio*, 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976); *Sanchez v. State*, 707 S.W.2d 575, 580 (Tex.Crim. App.1986); *Cuellar v. State*, 613 S.W.2d 494, 495 (Tex.Crim.App.1981).

**406**

must review the matter under the fundamental error standard in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984).

The charge should instruct the jury on the law applicable to every theory within the scope of the indictment which the evidence will support, whether favorable to the State or to the defendant. *Nance*, 807 S.W.2d at 859; *Garcia v. State*, 791 S.W.2d 279, 281 (Tex.App.—Corpus Christi 1990, pet. ref'd). The trial court is not required to charge on an issue the evidence does not raise. *Nance*, 807 S.W.2d at 860 and 863; *Mora v. State*, 797 S.W.2d 209, 211 (Tex.App.—Corpus Christi 1990, pet. ref'd).

Voluntary intoxication is not a defense to a crime. *Ramos v. State*, 547 S.W.2d 33–34 (Tex.Crim.App.1977); *Evers v. State*, 31 Tex.Crim. 318, 20 S.W. 744, 746 (1892); Tex.Penal Code Ann. § 8.04(a) (Vernon 1974). Involuntary intoxication can negate the element of intent. *See Torres v. State*, 585 S.W.2d 746, 749 (Tex.Crim.App. 1979). To show insanity by intoxication, a defendant must show that he or she 1) exercised no independent judgment or volition in taking the intoxicant, and 2) as a result of intoxication, did not know whether the conduct was wrong or was incapable of conforming such conduct to the requirements of the law allegedly violated. *Joiner v. State*, 814 S.W.2d 135, 136 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd); *Villarreal v. State*, 661 S.W.2d 329, 331–32 (Tex.App.—Corpus Christi 1983, no pet.); *see Torres*, 585 S.W.2d at 749.

We have carefully examined all of the evidence. Appellant drank whiskey all day before the shooting, and she admitted that she "took one hit" off a marihuana cigarette. While much evidence shows that appellant was intoxicated at the time of the crime, no evidence supports a reasonable inference that her intoxication was not voluntary. We overrule point fifteen.

The trial court's judgment is affirmed.