

NUMBER 13-13-00010-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JUAN OLIVAREZ,                                                               Appellant,

v.

THE STATE OF TEXAS,                                                          Appellee.

## On appeal from the 105th District Court
## of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides and Longoria
### Memorandum Opinion by Justice Benavides

By two issues, appellant Juan Olivarez appeals his convictions for six counts of aggravated sexual of a child younger than six years old, *see* TEX. PENAL CODE ANN. § 22.021 (West 2011), and two counts of indecency with a child. *See id.* § 21.11 (West 2011). We affirm.

# I.      BACKGROUND

A Nueces County grand jury indicted Olivarez on six counts of aggravated sexual assault of a child,[1] *see id.* § 22.021, and two counts of indecency with a child.   *See id.* § 21.11.   Olivarez was tried by a Nueces County jury, and the following evidence was presented at trial.

Olivarez dated the complainant's mother (C.G.) in late 2010.   Olivarez, C.G., and the complainant (M.G.), then age five, eventually moved in together at an apartment complex.   Three months later, however, C.G. and M.G. moved out to live with C.G.'s parents, but C.G. continued to date Olivarez.   One day in May 2011, C.G. bathed M.G. and noticed that M.G.'s vaginal area was "really red" and "irritated."   According to C.G., M.G. told her that Olivarez had touched her vagina and anus after school in the apartment where the three of them used to live.   C.G. testified that she notified M.G.'s pediatrician, who directed C.G. to take M.G. to Driscoll Children's Hospital for an appropriate examination.   Once at Driscoll Hospital, hospital workers told C.G. that they were going to notify child protective services and the Corpus Christi Police Department.

M.G. also testified.   Through the use of demonstrative dolls, M.G. testified that Olivarez touched her vagina and anus with his hand and his penis "more than one time."   M.G. also stated that Olivarez showed her a video of "a boy and a girl" doing stuff "together" and "wearing no clothes."   M.G. recalled one instance in which Olivarez put his penis into M.G.'s vagina and afterward went to the restroom to retrieve a Kleenex and "spread yellow pee on it" from his penis.   M.G. testified that the "yellow pee" would also

---

[1] The State termed the offense "super aggravated sexual assault of a child" and referenced section 22.021 of the penal code.   The State is referring to aggravated sexual assault of a child under the age of six, which, if proved, carries a minimum punishment of twenty-five years' imprisonment.   *See* TEX. PENAL CODE ANN. § 22.021(2)(f)(1) (West 2011).   For purposes of clarity, we will refer to the charge simply as "aggravated sexual assault of a child."

come out after Olivarez put his penis in her anus. M.G. stated that she did not tell her mother about the incidents after they happened because M.G. thought that C.G. would "feel sad and scared," which in turn would make M.G. sad.

Olivarez testified in his own defense and denied all of the allegations. According to Olivarez, M.G. would hit him "in the groin" in front of C.G. Additionally, Olivarez testified that M.G. grabbed his hand and put it on her "crotch," but he "pushed [M.G.] away," but then M.G. would lean on top of him as if it was "some kind of game."

The jury found Olivarez guilty on all counts. The trial court assessed punishment at seventy-five years' imprisonment in the Texas Department of Criminal Justice—Institutional Division for Counts One, Two, Three, Four, Five and Six each, and at twenty years' imprisonment for Counts Seven and Eight each. The trial court further ordered the sentences in Counts One, Two, Three, and Seven to run concurrently, but consecutive to the sentences in Counts Four, Five, Six, and Eight, which were ordered to run concurrently. This appeal ensued.

## II.    MOTION TO SUPPRESS

By his first issue, Olivarez asserts that the trial court committed reversible error by denying his motion to suppress a recorded audio interview with a Texas Department of Family and Protective Services (TDFPS) investigator.

### A. Standard of Review

A trial court's ruling on a motion to suppress evidence is reviewed on appeal under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). We must give "almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact

3

findings are based on an evaluation of credibility and demeanor." *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (en banc). Additionally, we should afford the same amount of deference to a trial court's rulings on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Id.* We review de novo mixed questions of law and fact that do not depend on credibility and demeanor. *Amador*, 221 S.W.3d at 673.

## B. Discussion

Olivarez sought to suppress his audio interview conducted by TDFPS investigator Bernadette Molina at the Nueces County jail.[2] Olivarez argues that Molina was "working implicitly on behalf of the police when she interviewed [Olivarez] at the jail." As a result, Olivarez contends that the statements made during the interview were the result of a custodial interrogation by an agent of the police (Molina). Olivarez further argues that because it was a custodial interrogation, Molina violated his Fourth Amendment rights for failing to administer his *Miranda* warnings. We disagree.

As a general rule, the State may not use any statements stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. *Wilkerson v. State*, 173 S.W.3d 521, 526 (Tex. Crim. App. 2005) (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). These procedural safeguards do not apply, however, to all types of custodial questioning. *Wilkerson*, 173 S.W.3d at 526. Instead, it applies only to questioning by

---

[2] Olivarez filed a pre-trial motion to suppress on this issue, but the trial court did not address it until the time of trial, in a hearing outside the presence of the jury, when the State sought to admit the recorded interview into evidence. The audio disk that was admitted into evidence at trial was not included in the record on appeal. Thus, it was unavailable for our review.

4

law enforcement officers or their agents. *See id.* "State agents" are those who are working for or on behalf of police. *See id.* General employees of the State are not, by themselves, "agents of the State" for purposes of defining custodial interrogation under *Miranda*. *Id.*; *see Paez v. State*, 681 S.W.2d 34, 37 (Tex. Crim. App. 1984) (en banc). Consequently, not all government workers must be familiar with and ready to administer *Miranda* warnings or comply with the statutory procedural requirements of article 38.22. *Wilkerson*, 173 S.W.3d at 526; *see* TEX. CODE CRIM. PROC. ANN. art. 38.22 (West 2005).

A criminal defendant who alleges that an individual acted as an agent of the police has the burden to prove it. *Wilkerson*, 173 S.W.3d at 529. If the defendant meets this burden and shows that this individual is working for or on behalf of the police by interrogating a person in custody, then that agent is bound by all constitutional and statutory confession rules, including *Miranda* and article 38.22. *See id.*; *Cantu v. State*, 817 S.W.2d 74, 75–77 (Tex. Crim. App. 1991). While numerous factors are to be considered, the bottom-line inquiry for our court is whether the custodial interview was conducted (explicitly or implicitly) on behalf of the police for the primary purpose of gathering evidence or statements to be used in a later criminal proceeding against the interviewee. *Wilkerson*, 173 S.W.3d at 531. Put more colloquially: was the interviewer "in cahoots" with the police? *Id.*

At trial, Molina testified that she interviewed Olivarez at the jail as part of her duties with TDFPS. According to Molina, part of her duties upon receiving an alleged child sexual abuse report is to contact the child's family, schedule an interview with the child, as well as set up an interview with the accused. As part of her investigation in this case, Molina met with C.G., M.G., and Olivarez's daughter-in-law, Clarissa. During her

meeting with Clarissa, Clarissa informed Molina that Olivarez had been arrested and was in custody at the Nueces County Jail. Later that day, Molina visited Olivarez at the Nueces County Jail. Molina testified that at that point in her investigation, she had no memory of discussing the case with Detective Daniel Rodriguez, who was investigating the case on behalf of the Corpus Christi Police Department. According to Molina, the specific purpose for visiting Olivarez at the jail was to "inform him that a report had come into the office involving him and to review the allegations and to also get a response back to those allegations." Molina stated that she respects an alleged perpetrator's request to have an attorney present or a refusal to talk to her without an attorney present.

Outside the jury's presence, Molina testified that her goal is not to get an admission from the defendants in the cases she is investigating. Instead, her goal is to let the accused know that a report had been filed against them. Additionally, Molina testified that she gave Olivarez "many opportunities" to end the conversation, but "he kept giving [Molina more] information." During questioning by the State, Molina testified that Detective Rodriguez (1) did not ask her to interview Olivarez; (2) did not indicate that he would like her to interview Olivarez; and (3) did not give her an idea of what questions to ask Olivarez. Molina also stated that during the interview, she did not give Olivarez any indication that she was working on behalf of law enforcement. Finally, Detective Rodriguez stated in earlier trial testimony that he did not direct Molina to do anything during his investigation, and did not have any authority over Molina or any other TDFPS investigator.

We conclude that Olivarez did not meet his burden to establish that Molina was

6

working for or on behalf of the police by interrogating Olivarez in custody.[3] *See id.* at 529. Thus, Molina was not required to Mirandize Olivarez, and the trial court did not err in denying the motion to suppress on this basis. *See Wilkerson*, 173 S.W.3d at 531. Accordingly, his first issue is overruled.

## III. ADMISSIBILITY OF EVIDENCE

By his second issue, Olivarez asserts that the trial court erred by allowing C.G. to testify regarding Olivarez's awareness of the allegations against him from a handwritten apology letter that was admitted into evidence.

### A. Preservation of Error

As a threshold matter, we must first determine whether Olivarez properly preserved error for review. *See Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009) ("Preservation of error is a systemic requirement that a first-level appellate court should ordinarily review on its own motion."). Generally, error is preserved if the record shows that (1) a specific complaint was made to the trial court by request, objection, or motion; and (2) the trial court ruled on the complaint or refused to rule and the party objected to the refusal. *See* TEX. R. APP. P. 33.1(a). To be timely, an objection must be made as soon as the basis for the objection becomes apparent. *Lagrone v. State*, 942 S.W.2d 602, 618 (Tex. Crim. App. 1997) (en banc).

Olivarez complains about the following exchange between the State and C.G. regarding an apology letter written by Olivarez after the allegations against him surfaced:

THE STATE: So if he says he's sorry [in the letter], do you think he knows?

---

[3] We also note that Olivarez's trial counsel admitted during the suppression hearing that he did not offer any testimony to show that Molina was acting on behalf of the police.

| | |
|---|---|
| C.G. | Yes. |
| DEFENSE COUNSEL: | Objection.   Calls for speculation. |
| THE STATE: | Well, I'm going to make the connection here in just a moment if I may have a bit of leeway. |
| THE COURT: | Okay. |

Olivarez argues that C.G.'s testimony violated rules of evidence 701 and 704. *See* TEX. R. EVID. 701 (opinion testimony by lay witness), 704 (opinion on ultimate issue). However, we conclude that the objection was made after the complained-of question was asked and answered, and was therefore not preserved error for appeal.   *Juhasz v. State*, 827 S.W.2d 397, 401 (Tex. App.—Corpus Christi 1992, writ denied) (citing *Polk v. State*, 729 S.W.2d 749, 753 (Tex. Crim. App. 1987) ("to preserve error on appeal by way of an objection alone, the objection must come *before* the tangible evidence which is clearly objectionable is admitted, or the question manifestly calling for objectionable testimony is answered in front of the factfinder").

Even assuming without deciding that Olivarez properly preserved error for appeal, we conclude that the trial court's ruling that allowed the testimony was not an abuse of discretion.   *See Fairow v. State*, 943 S.W.2d 895, 901 (Tex. Crim. App. 1997) ("Whether an opinion meets the fundamental requirements of Rule 701 is within the sound discretion of the trial court and its decision regarding admissibility should be overturned only if it abuses its discretion.").   C.G. testified that she and Olivarez saw each other every day until the allegations against him surfaced and then she began to ignore his phone calls.   C.G. testified that Olivarez would "start to worry" if they did not see each other every day.   It was not until this point that C.G. received the letter from Olivarez.   Therefore, this testimony, when read along with the complained of question

8

and answer, was an opinion based on C.G.'s perception of the situation, did not call for an opinion on an ultimate issue, and supports the trial court's decision to admit the evidence and did not amount to an abuse of discretion. *See id.* Olivarez's second issue is overruled.

## IV.    CONCLUSION

We affirm the trial court's judgment.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
25th day of July, 2013.