Jerry Clay **HEARD**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 06–94–00050–CR.

Court of Appeals of Texas, Texarkana.

Submitted Sept. 9, 1994.

Decided Sept. 19, 1994.

Discretionary Review Refused Feb. 22, 1995.

---

John Hagler, Dallas, for appellant.

Randal Lee, Asst. Crim. Dist. Atty., Linden, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

BLEIL, Justice.

Jerry Heard appeals from his conviction for murder. Heard contends that the trial court erred in trying him in absentia, that there is insufficient evidence to support his conviction, that error in the jury charge caused him egregious harm, and that he was deprived of the effective assistance of counsel. We resolve the issues in favor of the State and affirm.

In July 1992, Heard was living in an apartment at a Queen City motel. James Dake, a maintenance man and security guard at the

motel, saw Heard in the motel parking lot on the afternoon of July 8, 1992, accompanied by a woman that Dake knew as Pam. Dake had seen Heard and this woman together on three or four prior occasions.

At about 10:30 that evening, Dake was walking his dog and saw the woman walking away from Heard's room. She told Dake that she was waiting for a ride. The door to Heard's room closed. When Dake told Pam this, she said that was okay because Heard would let her back into the room. Dake went into his own apartment, which was a few rooms from Heard's apartment. Before entering his apartment, Dake looked back and saw the woman knocking on Heard's door. Dake testified that the woman had nothing in her hands. About fifteen seconds after Dake entered his apartment, he heard a noise. He looked out of his window and saw nothing unusual, but then heard the noise again. Dake opened his front door, looked out, and saw Heard standing over the woman's body with a gun in his hand. Heard turned and went back into his apartment. Dake saw no one else on the motel balcony.

The police arrived and convinced Heard to come out of his room. After Heard was taken into custody, the police entered the apartment. The police found no one else in the apartment, but did find a Smith & Wesson .357 Magnum lying in a gun case in an open dresser drawer. The gun had recently been fired and contained six empty casings. The police accounted for four shots: three bullets went through the glass in the apartment's front window and one bullet lodged in the window frame. Although the victim had been using the name Pamela Postoak, at trial the State identified her as Catherine Sanders. Sanders died from a gunshot wound to her forehead. Forensic tests identified the bullet taken from Sanders' body as having been fired by the gun taken from Heard's apartment.

Voir dire in this case was conducted on October 5, 1993. Trial was set for Wednesday, October 13, 1993. Although Heard was present during the jury selection process, he failed to appear in court on October 13, 1993, and efforts to locate him were unsuccessful. Despite Heard's absence, the trial court pro-

ceeded with the trial as scheduled. The trial lasted one day. The jury found Heard guilty of murder and, finding that Heard had two prior felony convictions, assessed a punishment of life imprisonment.

Heard contends that his conviction must be reversed because he was tried in his absence and because the trial court abused its discretion in denying defense counsel's motion for a continuance. Article 33.03 of the Texas Code of Criminal Procedure provides:

> In all prosecutions for felonies, the defendant must be personally present at the trial ... provided, however, that in all cases, when the defendant voluntarily absents himself after pleading to the indictment or information, or after the jury has been selected when trial is before a jury, the trial may proceed to its conclusion.

TEX.CODE CRIM.PROC.ANN. art. 33.03 (Vernon 1989).

Heard was present during jury selection on Tuesday, October 5, 1993. At that time, the trial court instructed the jury and others in attendance that the trial would begin at 9:00 a.m. on Wednesday, October 13, 1993. Heard failed to appear in court on the scheduled date. The trial court conducted a hearing on the matter of Heard's absence.

Heard's brothers, Dennis and Jim Heard, testified that they had not seen their brother since the previous Friday. On Saturday morning, one of Heard's brothers drove to his mother's house where Heard had been living. Heard was not there and his truck was gone, but his personal possessions were still in the house. Heard had recently recovered a large personal injury settlement, but the money was still in an account at a local credit union.

Heard was supposed to meet with his attorney the Sunday before trial, but did not appear for that meeting. Instead, Dennis Heard met with the defense attorney and told him that Heard was missing. Heard's brothers searched for him in Atlanta, in Texarkana, in Ashdown, Arkansas, and in the northwest Louisiana area. Jim Heard went by his mother's house the day before the trial and saw no signs that his brother had returned home. Heard's bondsman and the

local hospitals were contacted on the day of trial. The bailiff called Heard's name in the hall and received no response. There was no evidence that Heard was involuntarily absent. Heard's attorney moved for a continuance to give him time to locate his client, which the trial court denied. The trial concluded that same day. Heard was found in an intoxicated condition at his home · that evening.

Testimony elicited at Heard's motion for new trial established that Heard, in an intoxicated condition, visited a friend at 1:00 a.m. on the morning of trial. Heard and his friend drove around the county for several hours and drank a six-pack of beer. They arrived at Heard's house at 4:00 a.m. The two men consumed eighteen more beers during the day and stayed at Heard's house drinking, sleeping, and watching television. Heard did not mention that he had a court date. Heard's sister-in-law arrived that evening and told Heard he was supposed to be in court. Heard responded that his lawyer was supposed to take care of it and that he had forgotten about it. Heard testified at his motion for new trial that he was confused and thought his trial was scheduled for the following Wednesday.

■ Heard urges that the evidence shows that he was not voluntarily absent from the trial. Heard says that his confusion about the correct trial date is why he did not appear. The jury, the attorneys, and other interested parties showed up on the proper trial date. The record does not indicate that anyone else shared Heard's confusion about the correct date. Heard did not communicate with his family or attorney for five days, despite the fact that he had arranged to meet with one of his brothers and with his attorney prior to the trial. Heard had some responsibility to show up for designated court dates.

Heard contends that his confusion stemmed, at least in part, from his alcoholism. A local attorney who gives lectures on alcoholism and has read copious amounts of material on the subject testified at the hearing on Heard's motion for new trial that, to an alcoholic, drinking is not voluntary. The Texas Penal Code provides that voluntary intoxication does not constitute a defense to the commission of a crime. TEX.PENAL CODE ANN. § 8.04 (Vernon 1994). While Heard is not raising his alcoholism as a defense to any criminal offense, case law interpreting this code provision is instructive in determining when intoxication is voluntary or involuntary and aids us in classifying Heard's absence as either voluntary or involuntary.

■ The common law disfavors the defense of intoxication because it would allow a person to avoid criminal responsibility because of his voluntary act in rendering himself of unsound mind, but this consideration does not exist if the intoxication is not self-induced. *Torres v. State*, 585 S.W.2d 746, 749 (Tex.Crim.App. [Panel Op.] 1979). Intoxication is voluntary if the accused has exercised independent judgment or volition in taking the intoxicant. *Id.* Involuntary intoxication is limited to instances when the defendant is unaware of what the intoxicating substance is, is under duress or force, or has taken medically prescribed drugs according to the prescription. *Shurbet v. State*, 652 S.W.2d 425, 428 (Tex.App.—Austin 1982, no pet.). The Austin Court of Appeals, citing to out-of-state authority to support its opinion, held that alcoholism may not be the basis for a defense of involuntary intoxication. *Id.* Heard cites no case law to contradict this view.

Furthermore, while evidence was presented at the hearing on the motion for new trial that Heard is an alcoholic and that an alcoholic may go on a drinking binge during times of stress, the evidence did not show that Heard involuntarily consumed alcohol on the day of his trial. *See Watson v. State*, 654 S.W.2d 730, 732 (Tex.App.—Houston [14th Dist.] 1983, no pet.) (affirming trial court denial of request for insanity instruction because there was no evidence that defendant, an alcoholic, involuntarily consumed alcohol on the night of the offense). Heard testified at his motion for new trial that the pressure of the approaching trial date did not cause him to drink the beer. Heard's intoxicated condition was self-induced and, as such, Heard's failure to appear for trial was a voluntary absence. *Cf. Bottom v. State*, 860 S.W.2d 266 (Tex.App.—Fort Worth 1993, no

pet.) (holding that defendant who attempted suicide was voluntarily absent from trial because *he chose* to ingest large quantities of medication).

■ Heard also urges that, even if his absence was voluntary, the jury had not yet been selected at the time he failed to appear. The court of criminal appeals has addressed this argument and construed the phrase "has been selected," as set forth in the Code of Criminal Procedure, to mean that point in time when the identities of the twelve jurors essentially has been ascertained. *Miller v. State*, 692 S.W.2d 88, 93 (Tex.Crim.App. 1985). The court found that the jury had been selected when the parties handed in their respective jury lists marked with their peremptory challenges. *Id.* at 93. Heard does not dispute that he was present for the selection of the twelve jurors and one alternate juror, who were instructed to return, and did return, the following Wednesday for the trial.

Heard argues that *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and the 1987 enactment of article 35.261 of the Texas Code of Criminal Procedure requires a revision of the rule set forth in *Miller*. *See* TEX.CODE CRIM.PROC.ANN. art. 35.261 (Vernon 1989) (providing that, after the parties have delivered their lists to the clerk and before the court has impaneled the jury, the defendant may request that the court dismiss the array). Heard argues that the phrase "has been selected" now means when the jury has been impaneled because up until that point in time, the jury panel is still subject to challenge.

■ A jury is considered impaneled when the members of the jury have been both selected and sworn. *Hill v. State*, 827 S.W.2d 860, 864 (Tex.Crim.App.1992). In *Miller*, the court of criminal appeals expressly declined to equate a selected jury with an impaneled jury. 692 S.W.2d at 93. The court of criminal appeals reasoned that one of the purposes of the code provision governing the voluntary absence of a defendant was to avoid having to repeat the voir dire process and decided that the phrase "has been selected" should be liberally construed to effectuate the legislature's intent. *Id.* The

*Batson* case and the enactment of a correlating statute to address the problem of constitutional violations made during jury selection does not change the premise on which the *Miller* case was decided.

■ Whether the trial court erred in denying the motion for a continuance and proceeding with the trial is reviewed under an abuse of discretion standard. *See Moore v. State*, 670 S.W.2d 259, 261 (Tex.Crim.App. 1984). Admittedly, Heard's absence frustrated defense counsel's plan, as revealed by the record, to argue that Heard acted in self-defense. The trial court instructed Heard when to be in court for his trial. The jury and other interested persons showed up for trial on the correct date. Heard was free on bond, and there was no evidence that Heard was involuntarily absent. Heard's bondsman and the local hospitals had been contacted. Heard had also failed to appear in court October 4, 1993, for docket call and a scheduled hearing on various pretrial motions. Heard had not been seen or heard from for five days and had failed to meet with his own lawyer. The trial court had some evidence before it from which it could infer that Heard's absence was voluntary.

■ Heard lists a number of factors, other than the voluntariness of his absence, that he believes the trial court should have considered when deciding whether to proceed with the trial: the likelihood that the trial could soon take place with the defendant present, the difficulty of rescheduling, the burden on the government in having to undertake two trials, and the inconvenience to the jurors. *See United States v. Benavides*, 596 F.2d 137 (5th Cir.1979). The court of criminal appeals declined to adopt the *Benavides* factors, but did state that the trial court, in its discretion, could consider these factors in deciding whether or not to proceed with the trial. *Moore*, 670 S.W.2d at 261. The trial court was not required to consider the factors in making its decision.

The trial court did not abuse its discretion by denying the motion for a continuance and proceeding with the trial. Heard's contention that he is entitled to a new trial because he was tried in his absence is overruled.

■ Heard complains that the State failed to prove beyond a reasonable doubt that he was the individual who shot Sanders. When reviewing a sufficiency of the evidence challenge, the appellate court views all of the evidence in the light most favorable to the verdict and determines whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Urbano v. State,* 837 S.W.2d 114, 115 (Tex.Crim.App. 1992).

■ Heard notes that there was no eyewitness to the shooting and no showing of any prior violence in the relationship between himself and Sanders, nor did he make any incriminatory statements about the shooting. Heard is correct.

Nonetheless, the State did offer proof that Heard was seen standing over Sanders' body with a gun in his hand seconds after the gunshots were fired. Bullet holes were found in Heard's window, and the placement of the broken glass indicated that the shots came from inside the apartment. The apartment maintenance man saw no one but Heard on the balcony, and the police found no one else in Heard's apartment.

A gun that had recently been fired was found in Heard's apartment. The gun matched the bullet removed from Sanders' body. Heard states that the forensic testimony did not establish that the gun found in his apartment fired the bullet taken from Sanders' body, but established only that a bullet provided to the firearms expert by the medical examiner was fired from the gun. The medical examiner who performed the autopsy testified that she removed the bullet from Sanders' body and took it upstairs to be examined by the firearms division of the same forensics lab where the autopsy was performed.

■ Circumstantial evidence is reviewed under the same standard as direct evidence. *Geesa v. State,* 820 S.W.2d 154, 158–59 (Tex. Crim.App.1991). There is sufficient evidence from which a reasonable jury could find that Heard was the individual who shot Sanders.

Assuming that the State presented sufficient evidence to identify Heard as the shooter, Heard contends that the State still failed to prove that Sanders' death was caused by Heard's criminal act. Heard asserts that the facts established by the State are just as consistent with an act of self-defense as with a criminal act. There was no evidence that Sanders exhibited any anger or animosity against Heard that night or was carrying a weapon. No self-defense instruction was submitted to the jury (and there is no complaint regarding its absence). The jury found that Heard shot Sanders without justification. Viewed in the light most favorable to the verdict, there is sufficient evidence to support a finding that Sanders' death was the result of Heard's criminal act.

■ Heard contends that the trial court erred by not limiting the definitions of the applicable culpable mental states included in the charge to focus on the result of his conduct. Heard was indicted and tried for intentionally and knowingly causing the death of an individual. *See* TEX.PENAL CODE ANN. § 19.02(a) (Vernon 1994). Tracking the definitions set forth in the Texas Penal Code, the jury charge defined when a person acts intentionally or knowingly:

(a) A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

(b) A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

*See* TEX.PENAL CODE ANN. § 6.03(a), (b) (Vernon 1994). No objection was made to these definitions at trial.

■ Intentional murder is a result-of-conduct offense. *Martinez v. State,* 763 S.W.2d 413, 419 (Tex.Crim.App.1988). Prior to April 1994, the court of criminal appeals had held that the full statutory definition of

the culpable mental state included in a charge on a result-oriented offense was not error when a reading of the charge as a whole showed that the definition was properly limited. *Kinnamon v. State*, 791 S.W.2d 84, 89 (Tex.Crim.App.1990). The court of criminal appeals stated that the definition complained of should be examined in the context in which it appeared, instead of an examination limited to a portion of the charge standing alone. *Id.* at 87.

 In April 1994, however, the court of criminal appeals handed down its decision in *Cook v. State*, 884 S.W.2d 485 (Tex.Crim.App. 1994). The court overruled *Kinnamon* and held that it is error for a trial court not to limit the definitions of the culpable mental states as they relate to the conduct elements involved in a particular offense. *Cook*, at 491. In a murder case, failure to limit the definitions of the applicable mental states to focus on the result of the defendant's conduct constitutes error.

 This finding of error, however, does not end our inquiry. *Cook*, at 491. We now must review the record for harm. Because no objection to the definitions was made at trial, the error will require reversal only if it resulted in egregious harm to Heard. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim.App.1985) (opinion on reh'g). The degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of the probative evidence, the arguments of counsel, and any other relevant information revealed by the trial record. *Id.; see also Cook*, at 491 (noting that the degree to which the definitions were limited by other portions of the charge may be considered when performing this harm analysis).

 Neither the prosecution nor the defense mentioned the definitions in their closing arguments. The application paragraph in the jury charge asked the jury to determine whether "Heard ... did then and there intentionally and knowingly *cause the death*

of [Sanders]" (emphasis added). In a 1991 plurality opinion, the court of criminal appeals found that no egregious harm resulted from the trial court's failure to limit the definition of the culpable mental state because the definition was limited by other portions of the charge asking if the defendant had intentionally caused the victim's death, which linked the defendant's mental state to the result of his conduct.[1] *See Turner v. State*, 805 S.W.2d 423, 432 (Tex.Crim. App.1991) (Miller, J., concurring opinion on reh'g).

Moreover, Sanders was last seen seconds before her death knocking on Heard's door. There was evidence that Heard fired the gun four to six times through his apartment window, striking Sanders once in the forehead. A review of the record reveals that Heard's attorney had planned on raising the issue of self-defense, which would mean that Heard knew someone was standing outside of his apartment when he fired the gun. The trial court's failure to limit the definitions of the culpable mental states does not rise to the level of egregious harm and does not constitute reversible error.

 Heard also contends that he was denied the effective assistance of counsel. To obtain a reversal of his conviction on the basis of ineffective assistance of counsel, Heard must show that his attorney's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for his attorney's unprofessional errors, the result of the proceeding would have been different. *Miniel v. State*, 831 S.W.2d 310, 323 (Tex.Crim.App.1992). A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* This test comes from the Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Whether the dictates of *Strickland* have been met is judged by the totality of the representation, rather than by isolated acts or omissions of the defendant's trial counsel. *Ex parte Welborn*, 785 S.W.2d

---

1. This same plurality opinion also foreshadowed the court's later decision to overrule *Kinnamon v. State*, 791 S.W.2d 84 (Tex.Crim.App.1990). *See Cook v. State*, 884 S.W.2d 485, 490–491 (Tex. Crim.App.1994); *see also Turner v. State*, 805 S.W.2d 423, 432 (Tex.Crim.App.1991) (Miller, J., concurring opinion on reh'g).

391, 393 (Tex.Crim.App.1990); *Butler v. State,* 716 S.W.2d 48, 54 (Tex.Crim.App. 1986).

Heard contends that his trial counsel was ineffective in failing to request a *Batson* hearing after the State used its peremptory challenges to strike four black venirepersons. We do not know the ethnic makeup of the jury that convicted Heard. Heard is white, and the victim was also white. While the defendant does not have to be of the same race or ethnicity as the struck venire-members to challenge the State's use of its peremptory strikes, defense counsel's failure to challenge the State's strikes could be sound trial strategy and a reasonable decision under ·the circumstances of this case. *See Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *see also Salazar v. State,* 818 S.W.2d 405, 407 n. 5 (Tex. Crim.App.1991).

 Heard's defense attorney called no witnesses in the guilt/innocence phase of the trial nor in the punishment phase. The failure to call witnesses who know facts that would benefit the defendant and who were available to testify is hard to excuse or attribute to sound trial strategy. *See Butler v. State,* 716 S.W.2d at 55. A fair assessment of an attorney's performance, however, requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. *Miniel,* 831 S.W.2d at 323.

The record shows that Heard intended to claim he acted in self-defense when he shot Sanders. Heard's absence significantly hampered his attorney's efforts to present a reasonable defense. Heard asserts that an acquaintance, Ray Jones, was available to testify and would have testified that Sanders was breaking into Heard's apartment at the time she was shot. Heard testified at the motion for new trial that Jones was present on the night of the shooting, but evidence presented at the trial established that there was no one, other than Heard and the victim, inside or outside of Heard's apartment on the night of the shooting. Jones did not testify at the motion for new trial. Heard stated that

Sanders' son and cousin were willing to testify that Sanders was a violent and dangerous person; however, Heard also said that he did not know the identity of the person he shot at the time of the shooting, but fired his gun at a person beating on his window.

Heard complains that his defense attorney presented no mitigating evidence during the punishment phase. Heard asserts that his apartment manager was ready to testify that she knew Heard and that he was not a violent person. The State proved that Heard had two prior felony convictions for theft and fraudulent disposition of mortgaged property. During the punishment phase, Heard's attorney emphasized that these prior convictions were fifteen to twenty years old and were for nonviolent offenses.

Heard also complains of his attorney's failure to object to the broad definitions included in the jury charge on guilt/innocence and his failure to request an instruction to the jury on both guilt/innocence and punishment that they make no presumptions because of Heard's absence. As discussed above, until April 1994, the broad definitions of the applicable culpable mental states given in the charge were considered proper so long as the remainder of the charge properly limited those definitions. *See Kinnamon,* 791 S.W.2d at 89. Although the court of criminal appeals later expressed displeasure with *Kinnamon,* the case remained the rule until expressly overruled in April 1994. Defense counsel's failure to object to those definitions did not fall below an objective standard of reasonableness.

Also, prior to the presentation of the State's evidence, Heard's attorney had asked the trial court to instruct the jury to take no presumption from his client's absence, but the trial court stated that it would only tell the jury that Heard was not present and that the law authorizes the court to proceed with the trial. Heard's attorney mentioned Heard's absence during closing arguments and asked the jury not to presume or infer anything because of Heard's absence. Heard's defense attorney filed various pretrial motions for his client, conducted voir dire, moved for a continuance when his client failed to appear for the trial, made opening

and closing arguments, and cross-examined each witness called by the State.

Heard had the right to the reasonably effective, not errorless, assistance of counsel. *Miniel,* 831 S.W.2d at 323. The fact that another attorney might have pursued a different course of action does not necessarily indicate ineffective assistance. *Id.* at 325. The totality of the representation rendered in this case falls within that wide range of acceptable professional assistance. *See id.* at 323. Heard received reasonably effective assistance from his trial counsel.

We affirm the trial court's judgment.