Craig Emmett **MENDENHALL**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 10–98–109–CR.

Court of Appeals of Texas, Waco.

Jan. 26, 2000.

Rehearing Overruled March 22, 2000.

Stan Schwieger, Law Office of Stan Schwieger, Waco, for appellant.

Robert W. Gage, County/Dist. Atty., Fairfield, for appellee.

Before Chief Justice DAVIS, Justice VANCE and Justice GRAY (concurring).

## OPINION

REX D. DAVIS, Chief Justice.

A jury convicted Craig Emmett Mendenhall of assaulting a public servant. *See* Tex. Pen.Code Ann. § 22.01(b)(1) (Vernon Supp.2000). Mendenhall pleaded true to two prior felony convictions alleged to enhance his punishment to that for an habitual offender, and the jury sentenced him to sixty-five years' imprisonment. He claims in three issues that the trial court erred by: failing to charge the jury on involuntary intoxication; failing to correctly charge the jury on "the specific intent element of aggravated assault"; and decreeing in the written judgment that his sentence run consecutively with a prior sentence without having made a proper oral pronouncement that the sentence would run consecutively. In an additional

issue, Mendenhall asserts that the statute which permits trial courts to order consecutive sentences constitutes an improper delegation of this authority to the judiciary because it does not provide adequate guidelines for exercise of this alleged "legislative function." *See* TEX.CODE CRIM. PROC. ANN. art. 42.08 (Vernon Supp.2000).

## BACKGROUND

Mendenhall's former wife sued for divorce while he was incarcerated in the Institutional Division of the Texas Department of Criminal Justice. TDCJ officials returned him to Freestone County for the divorce trial. At the conclusion of the trial, the presiding judge, the Honorable H.D. Black, Jr., pronounced how he intended to divide the marital estate. Mendenhall became "agitated," and three deputies had to restrain him. He made an obscene remark to Judge Black who had the deputies bring him to the bench where the following occurred:

THE COURT: Mr. Mendenhall, I need to inform you that I will be certifying this record and we will send it to the Texas Department of Criminal Justice. This will go on your record.

MENDENHALL: This will go on my record?

THE COURT: This will go on your record.

(Mr. Mendenhall spit on Judge Black. Each deputy simultaneously pressed their free hand over Mr. Mendenhall's mouth. The deputies began removing Mr. Mendenhall from the courtroom.)

THE COURT: Okay. Let the record reflect that Mr. Mendenhall has just spit at me, and that will go—

MENDENHALL: Bitch! God damn whore!

THE COURT: Let the record also reflect that Mr. Mendenhall is resisting arrest. He has three deputies out in the hall who are trying to restrain him.

Julie Morrison was one of the three deputies attempting to restrain Mendenhall. Morrison was holding him from behind. When the deputies got Mendenhall to the door of the courtroom, he "locked his feet into the door frame and he threw himself back trying to break free." As a result, Mendenhall pinned Morrison's right hand against the door frame. This action cracked one of the bones in Morrison's right hand.

At trial, Mendenhall sought to establish that he committed these acts while under the influence of hypoglycemia, a condition brought on by an abnormally low blood sugar level. He had been diagnosed with diabetes five and one-half weeks before the divorce trial. A jailer testified that he gave Mendenhall his insulin shots according to the schedule provided by TDCJ. The jailer also stated that Mendenhall received a special diet because of his diabetes.

According to a TDCJ physician, hypoglycemia can cause "mental confusion" and can lead to conduct such as that demonstrated by Mendenhall at the conclusion of the divorce trial. The physician explained that a normal blood sugar level is between 80 and 120. However, if a diabetic receives insulin but does not "receive anything to eat," his blood sugar level will go down. Hypoglycemia occurs when the level reaches 60 or below. The physician agreed that emotional stress "like a very disagreeable divorce" can also contribute to this condition.

On cross-examination by the State, the physician testified that Mendenhall's blood sugar level would have to have been between 40 and 50 to cause the outburst demonstrated at his divorce trial. Medical records from Mendenhall's emergency room visit following this outburst reveal a blood sugar level of 113. After reviewing these records and a transcript of Mendenhall's final argument at the divorce hearing (before the outburst), the physician gave his opinion that Mendenhall was not hypoglycemic at the conclusion of the hearing.

Mendenhall testified that he usually received his insulin shot between 3:00 and 3:30 in the morning while at TDCJ and that he was fed immediately thereafter. On the morning of the divorce trial, he received his injection at 7:00. Mendenhall testified that jail officials gave him an apple, oatmeal, donuts, coffee and juice for breakfast that morning. He tried the oatmeal, but "it was cold and tasted horrible, and [he] drank [his] juice and coffee." He recalled feeling "queasy" during the morning of the divorce hearing, though he could not "contribute it definitely to [his] diabetes." He did not recall what was served for lunch, but he "ate only a couple of bites of it."

Mendenhall testified that he "kind of blacked out" at the conclusion of the divorce trial that afternoon:

It was like passing out. I could hear people outside around me. I remember being grabbed. I remember coming being [sic] then I was standing in front of the bench and Judge Black was—was telling me something and I couldn't understand it.

And you know, later everybody told me what happened, and I'm going to be honest with you, I feel real bad about what happened to Judge Black. That is not my normal demeanor. And I'll be honest with you, it scared me; I mean it scared me. I remember seeing my wife standing in the courtroom with my stepdaughter, and I remember I couldn't breathe.

In rebuttal, the State called the physician who treated Mendenhall in the emergency room after his outburst in Judge Black's courtroom. This physician stated that "many times [a] hypoglycemic reaction is thought to be drunkenness." He explained that the symptoms of hypoglycemia do not generally manifest themselves in a short period of time. Rather, the symptoms usually manifest themselves over a period of between 30 and 60 minutes, although they could begin to appear in as little as five or ten minutes. He

testified that an overdose of insulin can lead to hypoglycemia. He explained that, once insulin is administered, food must be eaten to maintain an appropriate blood sugar level. After reviewing Mendenhall's medical records, this physician observed that Mendenhall has "chronically high blood sugar" rather than the low blood sugar level associated with hypoglycemia. Based on portions of the transcript of Mendenhall's divorce trial and his emergency room records, this physician expressed his opinion that Mendenhall was not suffering from hypoglycemia at the conclusion of the divorce trial.

Mendenhall later provided additional testimony about his diabetic condition. He described the education he received from prison officials about his then newly-diagnosed condition as follows:

This incident in the courtroom with low blood sugar scared the hell out of me, and I'll state for the record that TDC really didn't do too much as far as education on diabetes. They gave me a dietitian and told me, well, main thing don't eat any cookies, don't eat moon pies, don't eat nothing.

After the close of evidence, Mendenhall submitted written requests for the court to instruct the jury on insanity and involuntary intoxication. The court denied both requests.

**INVOLUNTARY INTOXICATION**

Mendenhall contends in his first issue that the court erred by failing to instruct the jury on the affirmative defense of involuntary intoxication. The State responds that: involuntary intoxication by prescribed drugs is not recognized in Texas; Mendenhall's requested charge did not adequately inform the court of the nature of his request; the evidence does not raise this defensive issue if it is recognized; and Mendenhall was not harmed by the court's failure to submit the requested charge.

Settled case law establishes that a trial court must charge the jury on any

defensive issue raised by the evidence, "regardless of its substantive character." *Brown v. State,* 955 S.W.2d 276, 279 (Tex. Crim.App.1997).

> A defendant is entitled to an affirmative defensive instruction on every issue raised by the evidence regardless of whether it is strong, feeble, unimpeached, or contradicted, and even if the trial court is of the opinion that the testimony is not entitled to belief. The defendant's testimony alone may be sufficient to raise a defensive theory requiring a charge.

*Id.* (quoting *Williams v. State,* 630 S.W.2d 640, 643 (Tex.Crim.App.1982)).

> This rule is designed to insure that the jury, not the judge, will decide the relative credibility of the evidence. (citation omitted). When a judge refuses to give an instruction on a defensive issue because the evidence supporting it is weak or unbelievable, he effectively substitutes his judgment on the weight of the evidence for that of the jury. (citation omitted). The weight of the evidence in support of an instruction is immaterial.

*Id.* (quoting *Woodfox v. State,* 742 S.W.2d 408, 409–10 (Tex.Crim.App.1987)).

■ Involuntary intoxication constitutes an affirmative defense to prosecution when:

- the accused has exercised no independent judgment or volition in taking the intoxicant; and
- as a result of his intoxication he did not know that his conduct was wrong or was incapable of conforming his conduct to the requirements of the law he allegedly violated.

*Torres v. State,* 585 S.W.2d 746, 749 (Tex. Crim.App. [Panel Op.] 1979) (citing *City of Minneapolis v. Altimus,* 306 Minn. 462, 238 N.W.2d 851, 856–57 (1976)); *Aliff v. State,* 955 S.W.2d 891, 893 (Tex.App.—El Paso 1997, no pet.); *Juhasz v. State,* 827 S.W.2d 397, 406 (Tex.App.—Corpus Christi 1992, pet. ref'd).

■ The first element of this affirmative defense can be satisfied by evidence that the accused:

- was unaware he had ingested an intoxicating substance;
- ingested an intoxicant by force or duress; or
- took a prescribed medication according to the prescription.

*Heard v. State,* 887 S.W.2d 94, 98 (Tex. App.—Texarkana 1994, pet. ref'd); *Spriggs v. State,* 878 S.W.2d 646, 649 (Tex. App.—Corpus Christi 1994, no pet.); *Shurbet v. State,* 652 S.W.2d 425. 428 (Tex. App.—Austin 1982, no pet.); *accord* Lewis Buttles, Comment, *CRIMINAL LAW— Defenses—Involuntary Intoxication is a Defense in Texas,* 12 St. MARY's L.J. 232, 239–40 (1980).

■ Intoxication by prescription medication occurs only "if the individual had no knowledge of possible intoxicating side effects of the drug, since independent judgment is exercised in taking the drug as medicine, not as an intoxicant." Buttles, *supra,* at 240; *accord Altimus,* 238 N.W.2d at 857; *see also Aliff,* 955 S.W.2d at 893 ("nothing indicated that Aliff took the intoxicating drugs unknowingly, or without knowledge of their effect").

■ The State suggests that Texas courts have not recognized involuntary intoxication by prescription drugs as a defense. However, several Texas courts have identified intoxication by prescription medication as a possible form of involuntary intoxication. *See Heard,* 887 S.W.2d at 98; *Spriggs,* 878 S.W.2d at 649; *Shurbet,* 652 S.W.2d at 428; *see also Torres,* 585 S.W.2d at 748–50 (finding evidence to support charge on involuntary intoxication by unknowing ingestion of the drug thorazine). In addition, the Penal Code defines intoxication to include a loss of "the normal use of mental or physical faculties by reason of the introduction of alcohol, *a controlled substance, a drug, a dangerous drug,* a combination of two or more of those substances, or *any other substance*

into the body." TEX. PEN.CODE ANN. § 49.01(2)(A) (Vernon Supp.2000) (emphasis added). Accordingly, we conclude that involuntary intoxication by prescription medication is a recognized defense in Texas.

■■■ The State argues that Mendenhall's requested charge on involuntary intoxication does not accurately state the law as to this affirmative defense and thus is inadequate to preserve this issue for appellate review. To preserve error relating to the charge, a defendant must either object to the charge or make a request for a special charge on the issue in question. *Vasquez v. State*, 919 S.W.2d 433, 435 (Tex. Crim.App.1996); TEX.CODE CRIM. PROC. ANN. arts. 36.14, 36.15 (Vernon Supp.2000). A requested charge need not be "in perfect form." *Chapman v. State*, 921 S.W.2d 694, 695 (Tex.Crim.App.1996). Rather, it must be "sufficient to call the trial court's attention to the omission in the court's charge." *Id.* (quoting *Stone v. State*, 703 S.W.2d 652, 655 (Tex.Crim.App.1986)).

Mendenhall's written request for a charge on involuntary intoxication tracks the elements identified by the Court of Criminal Appeals in *Torres*. Accordingly, we conclude it sufficiently called the trial court's attention to the omission of an involuntary intoxication instruction in the court's proposed charge. *See id.* Thus, Mendenhall adequately preserved this issue for appellate review.

■■ The parties do not dispute that Mendenhall took insulin, a prescription medication, on the morning of his divorce trial. Both physicians testified that hypoglycemia can result if a diabetic fails to eat appropriately in conjunction with an insulin injection. Mendenhall testified that he did not eat much that day. He recalled that the medical personnel at TDCJ did not provide him much education on the appropriate diet for his condition. This constitutes some evidence that Mendenhall "had no knowledge of possible intoxicating side effects of [insulin]." Buttles, *supra*,

at 240; *accord Altimus*, 238 N.W.2d at 857; *see also Aliff*, 955 S.W.2d at 893. Thus, the record contains some evidence to show the first element of involuntary intoxication. *See Heard*, 887 S.W.2d at 98; *Spriggs*, 878 S.W.2d at 649; *Shurbet*, 652 S.W.2d at 428.

■■ Concerning the second element, the emergency room physician testified that "many times [a] hypoglycemic reaction is thought to be drunkenness." Mendenhall stated that he "kind of blacked out" at the end of his divorce trial and he "couldn't understand" what Judge Black was telling him. This constitutes some evidence that, because of hypoglycemia, Mendenhall was "incapable of conforming his conduct to the requirements of the law." *Torres*, 585 S.W.2d at 749; *accord Aliff*, 955 S.W.2d at 893; *Juhasz*, 827 S.W.2d at 406.

The record contains some evidence raising the affirmative defense of involuntary intoxication. Thus, the court erred by failing to submit this issue to the jury.

■■ Because Mendenhall requested a charge on involuntary intoxication, we must review the record to see if he suffered "some harm" as a result of this omission. *Medina v. State*, 7 S.W.3d 633, 642–43 (Tex.Crim.App.1999) (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim.App.1985) (op. on reh'g)). We review the record for "actual, not just theoretical, harm to the accused." *Id.* at 642–43 (quoting *Almanza*, 686 S.W.2d at 174).

Mendenhall's medical records reflect that he has a "chronically *high* blood sugar" level. The records reflect that his blood sugar level was normal when he was taken to the emergency room after his outburst in the divorce trial. The transcript of the divorce hearing demonstrates that he was not confused in any way just moments before his outburst. Based on these facts, both physicians concluded that Mendenhall was not experiencing hypoglycemia when he assaulted Deputy Morrison.

"Given the substantial amount of ... evidence [that Mendenhall was not suffering from hypoglycemia when he assaulted Deputy Morrison], and the tenuousness of evidence that [he did experience hypoglycemia], we find that the trial court's error in failing to give an [involuntary intoxication] instruction ... was harmless." *Id.* Accordingly, we overrule Mendenhall's first point.

## CULPABLE MENTAL STATE

■ Mendenhall argues in his second issue that the court failed to correctly charge the jury on the culpable mental states applicable to the offense charged. The State indicted Mendenhall for assault on a public servant. Section 22.01 of the Penal Code provides that a person commits this offense if he "intentionally, knowingly, or recklessly causes bodily injury to" "a person the actor knows is a public servant while the public servant is lawfully discharging an official duty." TEX. PEN. CODE ANN. § 22.01(a)(1), (b)(1) (Vernon Supp.2000).

■ Assault is a "result-of-conduct" crime. *See Kelly v. State,* 748 S.W.2d 236, 239 (Tex.Crim.App.1988); *Brooks v. State,* 967 S.W.2d 946, 950 (Tex.App.—Austin 1998, no pet.); *see also Cook v. State,* 884 S.W.2d 485, 487 (Tex.Crim.App.1994) (identifying the three "conduct elements" described in section 6.03 of the Penal Code). When the accused is charged with such a crime, the definitions in the charge concerning the applicable culpable mental states should be limited to the result of his conduct rather than the nature of or circumstances surrounding his conduct.[1] *Hughes v. State,* 897 S.W.2d 285, 295 (Tex. Crim.App.1994); *Cook v. State,* 884 S.W.2d at 491.

The definitional portion of the court's charge in Mendenhall's case limited the three applicable culpable mental states to the result of his conduct as required by *Hughes* and *Cook. See id.* In addition, the application section of the charge instructed the jury that he could be convicted only upon a finding that he intentionally, knowingly, or recklessly caused bodily injury to Morrison. *See* TEX. PEN.CODE ANN. § 22.01(a)(1). Accordingly, we conclude that the charge was proper. We overrule Mendenhall's second point.

## CUMULATION OF SENTENCES

■ Mendenhall challenges the constitutionality of the statute authorizing cumulation of sentences in his third issue. In his fourth issue, he challenges the manner in which the court ordered that his sentence in this case run consecutively with a prior sentence. However, Mendenhall did not raise either of these contentions at the time the court pronounced that his sentence would run consecutively with a prior sentence or later in a motion for new trial. Accordingly, he has not preserved these issues for our review. *See* TEX.R.APP. P. 33.1(a)(1); *Stevens v. State,* 667 S.W.2d 534, 538 (Tex.Crim.App.1984). Thus, we overrule his third and fourth issues.

We affirm the judgment.

TOM GRAY, Justice concurring.

Because I do not believe the evidence even raised the issue of involuntary intoxication, I respectfully dissent from the portion of the Court's opinion in which it holds that the trial court erred in refusing to instruct the jury on the affirmative defense. Nevertheless, because the Court

---

1. For example, section 6.03(b) of the Penal Code provides that a "person acts knowingly, or with knowledge, with respect to *the nature of his conduct or to circumstances surrounding his conduct* when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to *a result of his* conduct when he is aware that his conduct is reasonably certain to cause the result." TEX. PEN.CODE ANN. § 6.03(b) (Vernon 1994) (emphasis added). The Penal Code provides similar definitions for intentional, reckless, and criminally negligent conduct. TEX. PEN.CODE ANN. § 6.03(a), (c), (d) (Vernon 1994).

holds that it was harmless error, I concur in the result.

Mendenhall had been convicted of a crime and was serving his sentence in a State prison. He was transported to Freestone County to attend his trial for divorce. While in prison, Mendenhall had been diagnosed as a diabetic. On the day of the trial the timing of receiving his medication and his meals was altered. Near the end of a day in which he took a full dose of insulin for adult onset diabetes but, according to his testimony, ate relatively little food, he had a violent episode in which a sheriff's deputy was injured. It just so happened that the violent episode, during which he alleges to have had a "black out," occurred at precisely the moment that the trial court orally rendered judgment against him.

Involuntary intoxication is not a defense available to Mendenhall on these facts. First, there is the issue of whether or not involuntary intoxication due to a hypoglycemic reaction should be recognized as an affirmative defense. For purposes of this opinion only, I will assume that it is, notwithstanding that Mendenhall has not been able to cite a single case from across the nation that has recognized such a defense. Second, Mendenhall simply failed to establish the fundamental elements necessary to require the trial court to charge the jury on this theory as an affirmative defense.

Mendenhall's evidence was that he had been diagnosed as a diabetic for over five weeks. He acknowledges that he had received some counseling in prison regarding the disease. Appellant contends that because he had been only recently diagnosed as a diabetic that "there is a reasonable inference from this that he did not have the knowledge that he would have hypoglycemic shock given his situation." I believe the inference is exactly to the contrary.

Five weeks is more than enough time for Mendenhall to have determined what it meant to be a diabetic. He asks the judi-

cial system to accept as a matter of law that it is reasonable for a person diagnosed with a disease for which he must receive daily medication to not make any inquiry or do any research into the most basic aspects of the disease. As he states in his brief "to fully understand Appellant's claim, an understanding of the disease of diabetes is necessary." As he candidly admits in his brief, "the most common cause of hypoglycemia is an insulin reaction, ... Commonly, the patient takes the morning dose of medication, *i.e.,* insulin, then becomes sick and cannot eat." The most fundamental element that every diabetic knows or must immediately learn is that there is a direct connection between taking the medication and eating (both when you eat as well as what you eat).

Absent a specific showing that Mendenhall did not know and was unable to discover the consequences of not eating when he continued to take his medication, I cannot hold that the trial court erred in refusing to give an instruction on involuntary intoxication. Also, for the additional reason that he voluntarily ingested the insulin and voluntarily refused or failed to eat food that was made available to him, I would hold that the trial court did not err in refusing to give an instruction on involuntary intoxication.