

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1723-12

**DAVID EARL BROWN, Appellee**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIRST COURT OF APPEALS
### HARRIS COUNTY

KEASLER, J., filed a dissenting opinion, in which KELLER, P.J., and HERVEY, J., joined.

### DISSENTING OPINION

This case requires that we confront the issues relating to the intersection of the principles of voluntary absence and competence to stand trial: does a finding of one preclude the other? It is a question the majority does not correctly answer. I would hold that, by voluntarily absenting himself from his trial, David Brown has waived his right to be present at trial. And as a result of his voluntary absence, Brown cannot successfully challenge the trial judge's denial of his continuance and finding that he was competent.

A criminal defendant who is incompetent may not be put to trial without violating due process.[1] "It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to trial."[2] The constitutional standard for competency to stand trial asks whether the defendant has a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him.[3]

The requirement that a criminal defendant be competent derives from several constitutional concepts borne from due process—the presumption of innocence, the right to assistance of counsel, and the ability to assist in ones own defense.[4] "It also has been said that the requirement of competence is a byproduct of the rule requiring that a defendant be present at trial, since a trial of an incompetent defendant is virtually a trial *in absentia*."[5] The concepts of required presence and competency are constitutionally similar in that, at bottom,

---

[1] *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996) ("We have repeatedly and consistently recognized that 'the criminal trial of an incompetent defendant violates due process.'") (quoting *Medina v. California*, 505 U.S. 437, 453 (1992)); *Turner v. State*, No. AP-76,580, 2013 WL 5808250, *10 (Tex. Crim. App. Oct. 30, 2013).

[2] *Drope v. Missouri*, 420 U.S. 162, 171 (1975); *Turner*, 2013 WL 5808250 at *10.

[3] *Dusky v. United States*, 362 U.S.402, 402 (1960).

[4] *Ex parte Mines*, 26 S.W.3d 910, 914 (Tex. Crim. App. 2000).

[5] *Id.*

they require the defendant's presence—both physically and mentally. It has long been the rule that a defendant may waive his right to be physically present at trial.[6] Like the Federal Rules of Criminal Procedure and the United States Supreme Court before its enactment, we have held that a defendant may waive his right to be present.[7] In an analogous situation to that presented here, the Supreme Court has held that the defendant loses his right to be present when he is removed from a trial based upon his disruptive behavior.[8] Our statutory law codifies this long-standing rule. Texas Code of Criminal Procedure Article 33.03 states in relevant part, that "[i]n all prosecutions for felonies, the defendant must be personally present at the trial[.]" However, Article 33.03 expressly—and constitutionally[9]—permits the trial to continue in instances where the defendant "voluntarily absents" himself during trial which essentially constitutes a waiver of his rights to be present. It is, therefore, logically consistent that a defendant may waive his right to be competent at trial. Regardless of the preferred nomenclature, this case illustrates why waiver principles (and perhaps equity principles) suggest that a defendant, in certain instances, should not be permitted to present

---

[6] *See, e.g*, *Taylor v. United States*, 414 U.S. 17, 18–20 (1973); *Diaz v. United States*, 223 U.S. 442, 455 (1912).

[7] *Garcia v. State*, 919 S.W.2d 370, 374–75 (Tex. Crim. App. 1994); *Gonzales v. State*, 515 S.W.2d 920, 920 (Tex. Crim. App. 1974); *see Crosby v. United States*, 506 U.S. 255, 260 (1993); *Diaz*, 223 U.S. at 455; FED. R. CRIM. PRO. 43(c)(1)–(2).

[8] *See, e.g.*, *Illinois v. Allen*, 397 U.S. 337, 342–43 (1970).

[9] *See Taylor*, 414 U.S. at 18–19 (holding Federal Rule of Criminal Procedure 43 constitutional in permitting the continuation of a defendant's trial when he voluntarily absents himself, and that such an absence is a waiver of his right to be present).

mid-trial allegations of incompetence or claims regarding a judge's failure to comply with Texas Code of Criminal Procedure Chapter 46B.[10] Here, the facts upon which Brown grounds his claims and assertions of incompetence were the result of his own intentional and voluntary actions, and he should not prevail in his complaints about their consequences.

The Supreme Court warns that waiver of constitutional rights should not be taken lightly and should be found only upon an intentional relinquishment of those rights.[11] It follows that a court must determine whether a defendant's voluntary absence—and by extension a waiver of his right to be present at trial—was truly voluntary. Because Brown's claims below injected his alleged incompetence into his challenge of the judge's finding that he voluntarily absented himself, the question becomes whether Brown's attempted suicide was the product of an intentional, voluntary action.

We review voluntary-absence findings under an abuse-of-discretion standard.[12] An appellate court must consider whether the trial judge's ruling was arbitrary or unreasonable.[13] The evidence presented at the informal competency hearing held pursuant to Article

---

[10] TEX. CODE CRIM. PROC. ch. 46B (West 2012) (establishing trial court procedures in determining a defendant's competency to stand trial).

[11] *See Johnson v. Zerbst*, 304 U.S. 458, 464 (1938); *see also Pate v. Robinson*, 383 U.S. 375, 384 (1966) (holding that "it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial.").

[12] *Montoya v. State*, 291 S.W.3d 420, 426 (Tex. Crim. App. 2009).

[13] *Id*.

46B.004(c),[14] in addition to the other evidence the judge could consider, supports the judge's finding that Brown was voluntary absent.

According to the testimony taken at the hearing, there were no witnesses to the shooting and when the witnesses testified at the hearing, a thorough investigation had not been conducted. The responding officer opined that Brown attempted suicide based on the nature of the wound and the fact that a pistol was lying in the blood-stained grass where Brown was discovered by neighbors. The officer spoke to a witness who stated that on the night before the suicide attempt, Brown was "despondent over the way the Court proceedings were going" and discussed with that neighbor how to handle Brown's affairs if Brown was convicted. Brown's treating doctor at the hospital told another officer that the bullet entered through Brown's mouth, went up through his eye and lodged in his brain, but the doctor could not confirm that the injury was self-inflicted. Brown's psychiatrist, Dr. Root, testified that he was treating Brown for depression before his trial began. Although Dr. Root conceded to not examining Brown after his suicide attempt, Dr. Root stated that suicide "suggests mental illness."

From the testimony and circumstantial evidence, the judge could have reasonably found that Brown shot himself. The nature of Brown's injury strongly suggests that

---

[14] TEX. CODE CRIM. PROC. art. 46B.004(c) (West 2012) ("On suggestion that the defendant may be incompetent to stand trial, the court shall determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial.").

conclusion. The judge's finding that Brown's absence was not a result of incompetence, but was voluntary, is equally supported. As the State points out in its brief, the judge recently witnessed Brown testify in his own defense in the guilt phase and withstand cross-examination without any indication that he suffered from incompetence. There is certainly no evidence suggesting that Brown was incompetent—that he could not understand the nature of the proceedings against him or assist his counsel in presenting a defense—at any point before Brown attempted suicide. Brown's competence was not in question until he sustained the gunshot wound. Brown's attempted suicide may be indicative of mental illness, but it is not dispositive proof that he was legally incompetent or incapable of performing an intentional and voluntary act. It is equally reasonable to infer that Brown, having determined that his murder trial was not going his way and facing the prospect of a life sentence, consciously and with the full understanding of the gravity of his choices decided to take his own life. The judge's finding that Brown voluntarily absented himself was not an abuse of discretion. Several state courts of appeals' decisions support this conclusion.

In *Maines v. State*, the Eastland Court of Appeals addressed a similar factual situation.[15] At issue was whether the trial judge abused his discretion in failing to stop the trial and convene a separate jury to consider his competency.[16] Maine contended that he was incompetent during the second day of his trial during the guilt phase due to an overdose of

---

[15] *Maines v. State*, 170 S.W.3d 149 (Tex. App.—Eastland 2005, no pet.).

[16] *Id*. at 149.

prescription drugs. After being hospitalized for two days, Maines returned to trial, but his counsel claimed he was irrational and incoherent and questioned his competency to stand trial.[17] The judge held an informal competency inquiry and found the evidence of incompetency insufficient. The court of appeals found that, because Maines chose to overdose on medication, his trial could continue because he voluntarily absented himself.[18]

Similarly, the Fort Worth Court of Appeals held in *Bottom v. State* that Bottom's voluntary choice in ingesting a large quantity of medication with the goal of committing suicide was a voluntary absence and his trial properly continued without his presence.[19] Without needing to address Chapter 46B's proper application, the court put it succinctly: "Because Bottom acted voluntarily and because he cannot avoid trial by intentionally disabling himself, we overrule his point of error."[20] Without an express claim of incompetence, the appellant in *Heard v. State* alleged that his absence from trial was involuntary because it was the result of intoxication.[21] Finding that Heard's intoxication was voluntary, the court of appeals held that his trial properly continued.[22]

In an unpublished opinion in *Hill v. State*, the Fort Worth Court of Appeals again

---

[17] *Id.* at 150.

[18] *Id.*

[19] *Bottom v. State*, 860 S.W.2d 266, 267 (Tex. App.—Fort Worth 1993, no pet.).

[20] *Id.*

[21] *Heard v. State*, 887 S.W.2d 94, 97–98 (Tex. App.—Texarkana 1994, pet ref'd).

[22] *Id.* at 98–99.

confronted the issue of a defendant's ingestion of medication during his trial causing his absence.[23] After surveying the above cases, the court held that, assuming that Hill did consume drugs that potentially rendered him incompetent—even if that was not the intentional result—it was a voluntary act, and therefore constituted a voluntary absence at trial.[24]

A valid finding that a defendant voluntarily absented himself should end the competency inquiry. A defendant who chooses to end his participation in his own trial through affirmative, voluntary conduct has waived both Chapter 46B's statutory procedural provisions and the substantive rights they protect. The Supreme Court summarized this position's underlying principle over a hundred years ago: "It does not seem to us to be consonant with the dictates of common sense that an accused person, being at large upon bail, should be at liberty, whenever he pleased, to withdraw himself from the courts of his country and to break up a trial already commenced."[25] The majority arrives at the opposite conclusion by misreading *Drope v. Missouri*[26] for the proposition that when issues of competency and voluntary absence arise, a court is required to first address the competency issue. In reference to *Drope*, the majority states, "We agree with the United States Supreme

---

[23] *Hill v. State*, No. 2-06-094-CR, 2007 WL 866476 (Tex. App—Fort Worth Mar. 22, 2007, pet ref'd) (not designated for publication).

[24] *Id.* at *9.

[25] *See Diaz*, 223 U.S. at 457.

[26] 420 U.S. at 162.

Court that, under such circumstances, logic compels us to first decide whether a defendant is competent, and only if he is found to be competent, to decide whether his absence was voluntary."[27] The Supreme Court's opinion contains no such holding, even by implication.

Even if a valid finding of voluntary absence does not end the competence inquiry under Chapter 46B as I suggest, *Drope* lends little guidance to the resolution of the issues presented, despite the majority's reliance upon it. And even if *Drope* is instructive in some way on the instant cause, it certainly does not compel the result the majority reaches. *Drope* presented easily distinguishable facts from those presented here. The Court held that after shooting himself during the pendency of his trial, Drope was entitled to a stay of his trial so that a competency determination could be made.[28] However, the Court's decision was informed by a record indicating Drope suffered significant mental issues even before his trial began.[29] The Court highlighted the following facts as significant: a psychiatric examination report brought to the judge's attention pretrial noted that Drope had "difficulty participating well," "had a difficult time relating," and "was markedly circumstantial and irrelevant in speech" and contained a diagnosis of borderline mental deficiency and chronic anxiety reaction with depression; Drope's wife (and victim of the offense) believed Drope was sick

---

[27] *Ante*, op. at 14.

[28] *Drope*, 420 U.S. at 181–82.

[29] *Id.* at 179 ("[W]e conclude that the record reveals a failure to give proper weight to the information suggesting incompetence which came to light during trial. This is particularly so when viewed in the context of the events surrounding petitioner's suicide attempt and against the background of the pretrial showing.").

and needed psychiatric care; Drope had past episodes of irrational actions, like deliberately falling down the stairs when he did not get his way or was worried about something; Drope's irrational conduct of attempting to choke his wife days before she was set to testify against him in a trial which "depended in large measure on the indulgence of his wife"; and of course, Drope's self-inflicted gunshot wound.[30]

The *Drope* opinion stands broadly for the propositions that (1) a trial judge must be alert to changing circumstances suggesting a defendant's incompetence and (2) competency issues require considering the aggregate weight of all indicia of incompetence. The Court was clear that there are "no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed[.]"[31] The majority incorrectly finds factual similarity between *Drope* and the present case. First, unlike *Drope*, the trial judge was able to observe Brown's demeanor in trial, including his testimony on direct and cross examination, a day before his suicide attempt. Second, the extensive evidence of Drope's significant mental illness convincingly suggested that his illness likely had a bearing on his competency even before his trial began.[32] The record before us does not support a similar conclusion. Unlike Brown's situation, Drope's suicide attempt was just the last event in a long list of evidence pointing to his incompetence and was likely a product of it. Contrary

---

[30] *Id.* at 175–80.

[31] *Id.* at 180–81.

[32] *Id.* at 181.

to *Drope*'s fact-specific approach, the majority's opinion treats Brown's suicide attempt as a "fixed or immutable sign" that automatically triggers a stay and formal incompetency trial under Chapter 46B's provisions.

I would find that the trial judge did not abuse her discretion in finding that Brown voluntarily absented himself, and as result was not entitled to a continuance or formal competency trial. Therefore, remanding for a retrospective competency hearing pursuant to Chapter 46B is inappropriate. Accordingly, I would reverse the court of appeals' judgment.

DATE FILED: March 19, 2014

PUBLISH